G.G. & C. Bus Co., Inc., Petitioner *v.* Pennsylvania Public Utility Commission et al., Respondents.

G.G. & C. Bus Co., Inc., Petitioner *v.* Pennsylvania Public Utility Commission and Washington City Bus Lines, Inc., Respondents.

Argued March 6, 1979, before President Judge
Bowman and Judges Crumlish, Jr., Wilkinson, Jr.,
Mencer, Rogers, Blatt and MacPhail. Judges Di-
Salle and Craig did not participate.

*Stephen I. Richman*, with him *Greenlee, Richman,
Derrico & Posa*, for petitioner.

*Lawrence R. Zewe, Charles J. Streiff, William T.
Hawke*, with them *Henry M. Wick, Jr.; Wick, Vuono &
Lavelle; Melville G. M. Walwyn*, Assistant Counsel;
*Alfred N. Lowenstein*, Deputy Chief Counsel; and
*Kathleen Herzog Larkin*, Chief Counsel, for respon-
dents.

Opinion by Judge Rogers, May 2, 1979:

G.G. & C. Bus Co., Inc. (G.G. & C.) has filed peti-
tions for review of two orders of the Pennsylvania
Public Utility Commission. We have consolidated the
appeals for argument and disposition.

The first order, entered on February 8, 1978, in proceedings to which G.G. & C. was a party, modified certificates of public convenience theretofore issued to Washington City Bus Lines, Inc. (City Bus) to operate a scheduled bus service in Washington, Pennsylvania so as to include the condition, "[t]he rights contained herein shall expire on April 30, 1979 unless cancelled or extended prior to said date''; and required City Bus to petition the Commission for permanent deletion of the condition just mentioned within three months before April 30, 1979. The second order, entered on February 16, 1978, denied G.G. & C.'s application for an amendment to its existing authority which would grant it the additional right to provide scheduled bus service in the City of Washington and surrounding areas and terminated G.G. & C.'s preliminary and interim permission which had been granted on April 17, 1975 to operate over routes certified to City Bus.

City Bus has operated a scheduled bus service in the City of Washington, Pennsylvania under the Commission's authority since 1957. Beginning in 1973, City Bus intermittently failed to provide bus service for periods of from six days to seven months because the company was unable to meet its operating expenses. During the seven month cessation of City Bus operations, G.G. & C., whose authority included transporting children under school bus contracts, charter bus service and scheduled bus service in the Canonsburg area, filed an application for additional rights to provide bus service for the Washington City area and also to provide integrated bus service between the communities of Washington and Canonsburg. Suburban Lines, Inc., which has intervened in G.G. & C.'s appeal from the Commission's order denying G.G. & C. additional rights and which operates scheduled and chartered bus service over interstate and intrastate routes, filed protests to G.G. & C.'s application because

the routes requested would have placed G.G. & C. in competition with Suburban in providing bus service between Canonsburg and Washington. Five days after G.G. & C.'s application, filed on December 11, 1974, the Commission issued a rule on City Bus to show cause why its certificate should not be cancelled.

As we have noted, the Commission by an order dated April 17, 1975 had granted G.G. & C. preliminary and interim permission to operate over the City Bus's routes. City Bus resumed operations on May 14, 1975 and both companies have been operating over the same routes since that date.[1]

On October 29, 1975 the Commission discharged the rule on City Bus to show cause why its certificate should not be cancelled and instituted on its own motion an investigation to determine whether City Bus was presently rendering adequate service under its certified authority and whether it could continue to do so in the future. Action on G.G. & C.'s application for additional rights was suspended pending the outcome of the investigation. After the completion of the investigation, the Commission on May 4, 1977 issued a second rule to show cause on City Bus to show why its certificate should not be cancelled for failure to render adequate service and for failure to demonstrate financial responsibility.

After hearings, an Administrative Law Judge issued an initial decision on May 25, 1977 that the application of G.G. & C. to amend its existing authority to include the additional right to provide bus service in Washington and its environs should be granted.[2] The

---

[1] On February 23, 1978 we granted an order of supersedeas of that portion of the Commission's order entered on February 16, 1978 terminating the temporary authority of G. G. & C. to operate over City Bus routes.

[2] The Administrative Law Judge wrote that the authority sought by G. G. & C. differed from that held by City Bus in three aspects:

Administrative Law Judge found that the existing bus service provided by City Bus was inadequate and that there was a present need for additional service based upon his belief that City Bus's ability to provide service was uncertain because of financial and labor problems and the condition of its equipment. The effect of this initial decision if it had been approved by the Commission would have been to give G.G. & C. authority to duplicate the service that City Bus already had authority to provide and thereby place two bus companies in direct competition. The Commission did not approve the Administrative Law Judge's decision; rather it determined that the Washington area could not support two bus companies operating over similar routes and that City Bus could render reasonably adequate service.

A different Administrative Law Judge, after hearings on the rule to show cause on City Bus why its certificates should not be cancelled recommended that the rule be made absolute and the certificates be cancelled, because of what he considered to be City Bus's poor financial condition. The Commission also decided not to approve the initial decision of the Administrative Law Judge because City Bus had been reorganized in December 1975 with new owners and the Commission believed it should be given the chance to demonstrate its ability to provide adequate service. The Commission instead granted City Bus the conditional temporary rights first described in this opinion.

The appellant, G.G. & C., argues that the Commission committed an error of law by failing to adopt the initial decisions of the two Administrative Law Judges

G. G. & C.'s proposal offered fewer routes than City Bus; G. G. & C. would serve Franklin Mall; and G. G. & C. would combine the proposed routes with the authority it already held to provide through service on one bus between Washington and Canonsburg.

who heard the cases. Section 7.6(a) of the Act of March 31, 1937, P.L. 160, *as amended,* added by Act of October 7, 1976, P.L. 1075 (Act), 66 P.S. §458.6 (since repealed, but an identical provision appears as Section 335 of the Public Utility Code, 66 Pa.C.S. §335), reads:

> (a) When the commission does not preside at the reception of evidence, the presiding officer shall initially decide the case, unless the commission requires, either in specific cases or by general rule, the entire record to be certified to it for decision. When the presiding officer makes an initial decision, that decision then shall be approved by the commission and may become the opinion of the commission without further proceeding within the time provided by commission rule. On review of the initial decision, the commission has all the powers which it would have in making the initial decision. . . .

The Commission has not made a rule concerning the time when an initial decision of an Administrative Law Judge may become the Commission's opinion as authorized by the second sentence of Section 7.6(a). G.G. & C. would have us construe the statute as requiring in this circumstance that the initial decisions in these cases be deemed to have been approved by the Commission despite the circumstance that the Commission in fact reviewed both initial decisions, disapproved them and made quite different dispositions of the matters. G.G. & C. alternatively contends that we should construe Section 7.6(a) as limiting the Commission's scope of review of initial decisions to affirming them unless they are clearly erroneous. Neither proposal has merit. Section 7.2(a) of the Act, 66 P.S. §458.2(a), provides that the taking of evidence should be presided over by the Commission, or by one or more Commissioners, or by one or more Administrative Law Judges. When the Commission does not preside, the other au-

thorized person or persons who do preside are called in the statute the presiding officer. Section 7.6(a), a part of which we have hereinbefore reproduced, says that when evidence is received not by the Commission but by a presiding officer, the presiding officer shall initially decide the case, unless the Commission directs that the case be sent to it for decision at that point. The statute then says that when the presiding officer makes the initial decision and the Commission approves the initial decision, the presiding officer's opinion may become that of the Commission without more within a time provided by the Commission rule. The statute finally provides that the Commission when it reviews the initial decision of a presiding officer "has all the powers which it would have in making the initial decision. . . ." A broader grant of power to the Commission in the disposition of initial decisions in cases it chooses to review can scarcely be imagined. Therefore, G.G. & C.'s argument that the Administrative Law Judges' initial decisions could not be disregarded by the Commission is unacceptable.

G.G. & C. next complains that the Commission's orders—the one granting City Bus modified temporary rights to operate a bus service in Washington and the other denying G.G. & C. additional rights—were not supported by substantial evidence. The finding of fact common to both orders was that City Bus's service was reasonably adequate. G.G. & C., in applying for additional rights, had the burden of proving a need for additional service, the inadequacy of existing service and its ability to provide the service proposed. *Pennsylvania Public Utility Commission v. Purolator Courier Corp.,* 24 Pa. Commonwealth Ct. 301, 355 A.2d 850 (1976). City Bus on the other hand in response to the Commission's rule was required to present facts and reasons why its service was adequate. In its adjudication denying G.G. & C.'s application, the Com-

mission found that City Bus resumed operations on May 15, 1975 and had continued them adequately thereafter; and that the service area sought by both City Bus and G.G. & C. was not capable of supporting two bus companies offering parallel service. The record supports these findings. The determination of what amount of competition best serves the public interest and convenience is a matter for the Commission's discretion. *Purolator Courier, supra.*

An examination of the initial decisions of the two Administrative Law Judges reveals that their findings that City Bus provided inadequate service were based not on the quality of City Bus's existing service, which in reality was no different in quality from that provided by G.G. & C., but on their judgment that City Bus could not continue to render the present level of service because of its poor financial condition. The one Judge stated with respect to G.G. & C.'s application:

> As long as City Bus is operating reasonably adequately and is capable of providing adequate service in the immediate future all other things being equal, the application would not significantly improve the existing situation;

and:

> Under ordinary circumstances we might be persuaded to conclude that the Applicant [G.G. & C.] has failed to meet its burden of showing inadequacy of service by the certified carrier, City Bus. . . .

> To deny the application, the Commission should be convinced that City Bus can continue into the immediate future to maintain satisfactory service in Washington without Applicant's operations. In view of the past operations of City Bus, can the Commission be so convinced?

The other Judge, in concluding that City Bus should be shorn of its certificate, focused almost exclusively

on its financial condition, past, present and future, without much consideration of the quality of service City Bus had been providing since May, 1975.

The ability to maintain scheduled bus operations is surely one aspect of adequate service to the public. However a prediction concerning the quality of future service based on existing facts requires the application of judgment—clearly under the statute the Commission was entitled to substitute its judgment of City Bus's future capabilities for that of the Administrative Law Judges. The Commission's decision to deny G.G. & C.'s application and to afford City Bus with sixteen months in which to demonstrate that it should retain its certificate was, therefore, an appropriate alternative resolution, supported by substantial evidence in the record.

We further believe that the portion of the Commission's adjudication with respect to G.G. & C.'s application in which it upheld the adequacy of Suburban's service within its service area was supported by substantial evidence consisting of the testimony of Mr. J. Hilty, Suburban's president.

Finally, G.G. & C. makes two due process arguments. It first says that a PUC Commissioner appointed after oral argument was conducted in these cases, should not have participated in the decision because, having been an officer of a labor organization, he would have been biased in favor of City Bus, whose employees had taken over operation of that company. Since this question could have been, but was not, raised by G.G. & C. when the case was still before the Commission, we will not consider it. Pa. R.A.P. 1551. Concerning the same lately appointed Commission, G.G. & C. also complains concerning the fact that this Commissioner participated in the decisions in these cases, although he joined the Commission after oral argument of both. It is established law that even without

agreement of the parties a member of an administrative agency who did not hear oral argument may nevertheless participate in the decision where he has the benefit of the record before him. *Gearhart & Otis, Inc. v. Securities and Exchange Commission,* 348 F.2d 798 (D. C. Cir. 1965).

Orders affirmed.

Judge MENCER dissents.

### ORDER

AND Now, this 2nd day of May, 1979, the orders of the Pennsylvania Public Utility Commission appealed from at Docket Nos. 301 C.D. 1978 and 302 C.D. 1978 are hereby affirmed.