City of Philadelphia, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. United Transportation Union et al., Intervenors.

City of Philadelphia, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Commonwealth of Pennsylvania, Department of Transportation, Intervenor.

Submitted on briefs February 2, 1983, to Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Alan J. Davis,* City Solicitor, with him *Jill A. Douthett,* Deputy City Solicitor, and *Michael B. Tolcott,* Assistant City Solicitor, for petitioner.

*John J. Gallagher,* Assistant Counsel, with him *John B. Wilson,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*T. P. Shearer,* for intervenor, United Transportation Union.

OPINION BY JUDGE ROGERS, April 11, 1983:

We have consolidated for disposition the appeals of the City of Philadelphia from two orders of the

Pennsylvania Public Utility Commission (PUC); the first, directing the city to install, at the city's *initial* expense, highway traffic signals at two street-railroad crossings and to submit plans for the installation of the traffic signals within sixty days; and the second, granting the city an extension of time for its submission of plans from sixty days to six months, conditioned on the city's withdrawing its appeal to this court of the PUC's first order.

The city filed applications for PUC approval of the alteration and reconstruction of the street-railroad crossings, citing as their purpose the necessity for improving the circulation of traffic along and near the Delaware River waterfront. After hearing, an Administrative Law Judge (ALJ) recommended approval of the applications and the allocation of work responsibilities and costs among the entities involved. The PUC generally approved the applications, but remanded the record for further hearings on two issues: first, the allocation of the cost of street lighting, not at issue in these appeals, and second, the matter of safety protection at the street-railroad crossings. The United Transportation Union was joined as a party.

After a second hearing on June 11, 1980, a different ALJ directed that crossbuck signs, advance warning signs, pavement markings, and train crew flagging should be used as crossing protection. The union filed exceptions to the ALJ's decision, objecting to the use of train crew flagging and advocating the installation of highway traffic signals. As noted, the PUC directed the city to install highway traffic signals and to file a plan for their installation within sixty days. The city filed a Petition for Review of the order to No. 2320 C.D. 1981. The city filed a petition for modification, rescission, stay, supersedeas and a supplemental petition for reconsideration. The PUC generally denied the prayers of these applications but granted the city's

request for an extension of time for filing plans, conditioned on the withdrawal of the city's petition for review in this court.

Our review is "limited to a determination as to whether or not the decision of the PUC was supported by substantial evidence and was in accordance with the law and as to whether or not constitutional rights were violated." *Manchester Township v. Pennsylvania Public Utility Commission*, 43 Pa. Commonwealth Ct. 118, 121, 401 A.2d 1237, 1239 (1979).

The city states five questions: (1) whether the PUC's first order is supported by substantial evidence; (2) whether in issuing the first order the PUC committed an abuse of discretion by ignoring certain of the ALJ's findings; (3) whether the PUC made findings of fact in either proceeding; (4) whether the PUC erred in conditioning its grant of an extension of time to the city to comply with its first order upon the withdrawal of the city's petition for review from that order; and (5) whether the PUC committed an abuse of discretion by imposing the initial expense of installing the traffic signals on the city.

"Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion." *Manchester Township*, 43 Pa. Commonwealth Ct. at 121, 401 A.2d at 1239. There was testimony adduced at the hearings to the effect that the crossings are in an industrial area; that there is heavy truck traffic on Delaware Avenue to and from the piers, the Packard Marine Terminal, the Food Distribution Center, the Veterans Stadium Complex, the Walt Whitman Bridge, and Interstate Route 95. There is evidence that 1000 vehicles use one of the crossings each eight-hour period. The present volume of traffic at the other is approximately 250 vehicles each eight-hour period and that this will increase when improvements are completed to 10,000 vehicles a day. Traffic

counts for an eight-hour period show nine train movements at one of the crossings and two train movements at the other.

The testimony was conflicting, however, concerning what protective measures should be provided at the crossings. The Projects Control Engineer employed by the city testified that only train crew flagging, railroad crossbuck signs, railroad advance warning signs, and railroad crossing pavement markings were needed. A train service conductor and brakeman who is also a member of the union testified that train crew pre-empted traffic lights would be the most successful means of both controlling and protecting traffic at the crossings. He testified that motorists grow impatient with slow train movements and that drivers pay little attention to train flagmen. He further testified that under similar circumstances at other Delaware Avenue rail crossings there had been two deaths and many injuries to railroad flagmen. Finally, the railroad's witness testified that although it appeared that the railroad's position has vacillated on the type of protection necessary, "[w]e still feel that the best protection would be given the public and our train crews by traffic control devices installed and maintained by the City of Philadelphia, that is the standard traffic control device."

There was therefore substantial evidence upon which the PUC could have concluded, as it did, that in its view the record showed that adequate protection for both the public and train crews required that traffic lights with a manual over-ride be installed, replacing the current practice of train crew flagging. That conclusion, in turn, supports the PUC order directing the city to install traffic lights at the crossings.[1]

---

[1] The city also contends, in passing, that the PUC lacks jurisdiction to order the installation of traffic signals without the Department of Transportation's (DOT) approval, citing 75 Pa. C. S. §6122

The city next contends that the PUC committed an abuse of discretion by ignoring the findings of fact made by the ALJ, which led him to conclude that traffic could be safely controlled by means other than traffic signals. Section 335 of the Public Utility Code, 66 Pa. C. S. §335 provides:

> (a) Procedures.—When the commission does not preside at the reception of evidence, the presiding officer shall initially decide the case, unless the commission requires, either in specific cases or by general rule, the entire record to be certified to it for decision. When the presiding officer makes an initial decision, that decision then shall be approved by the commission and may become the opinion of the commission without further proceeding within the time provided by commission rule. On review of the initial decision, the commission has all the powers which it would have in making the initial decision. . . .

This court held in *Pennsylvania Retailers' Association v. Pennsylvania Public Utility Commission*, 64 Pa. Commonwealth Ct. 491, 503, 440 A.2d 1267, 1272 (1982) that:

> The decision of the Administrative Law Judge, though perhaps eminently reasonable, may always be superseded if a contrary decision is reached by the Commission based on substantial evidence. We have previously decided in

(a) (1), generally requiring such approval. But this is a highway-rail crossing. "It is clear that the subject of these proceedings is a highway-rail crossing and that the PUC therefore has exclusive jurisdiction to order work to be performed incident to the crossing regardless of the designation of the ownership of the highway involved." *Manchester Township*, 43 Pa. Commonwealth Ct. at 123, 401 A.2d at 1240 (DOT's regulations at 67 Pa. Code §211.1012(a) provide that plans for traffic signal installation within 300 feet of highway-railroad grade crossings require approval of PUC).

G.G. & C. Bus Co. v. Pennsylvania Public Utility Commission, 42 Pa. Commonwealth Ct. 384, 400 A.2d 941 (1979), that Section 335(a) of the Code gives the Commission powers far greater than those espoused by petitioners:

> The statute . . . provides that the Commission when it reviews the initial decision of a presiding officer "has all the powers which it would have for making the initial decision. . . ." A broader grant of power to the Commission in the disposition of initial decisions in cases it chooses to review can scarcely be imagined. Therefore [Petitioners'] argument that the Administrative Law Judge's initial decisions could not be disregarded by the Commission is unacceptable. *Id.* at 390, 400 A.2d at 944.

64 Pa. Commonwealth Ct. at 503, 440 A.2d at 1272-73 (quoting *G.G. & C. Bus Co. v. Pennsylvania Public Utility Commission,* 42 Pa. Commonwealth Ct. 384, 400 A.2d 941 (1979)). There being, as we have said, substantial evidence supporting the PUC's findings and conclusions, its order may be affirmed notwithstanding the contrary view of the ALJ.

The city also contends that the PUC's order is not suported by any findings of fact. "When the fact finder in an administrative proceeding is required to set forth his findings in an adjudication, that adjudication must include all findings necessary to resolve the issues raised by the evidence and which are relevant to a decision." *Page's Department Store v. Velardi,* 464 Pa. 276, 287, 346 A.2d 556, 561 (1975). *See also Birriel v. Workmen's Compensation Appeal Board,* 62 Pa. Commonwealth Ct. 124, 126, 435 A.2d 292, 293 (1981). The PUC adopted as its findings, findings proposed by the union in written exceptions filed to the ALJ's recommended adjudication. We find nothing wrong

with this action. The union's proposed findings are specific in nature and supported, as we say, by the record.

Next, the city says that the PUC committed an error of law by conditioning its grant of an extension for filing plans for traffic signals upon the withdrawal by the city of its petition for review of the PUC's initial order. In *Tripps Park Civic Association v. Pennsylvania Public Utility Commission*, 52 Commonwealth Ct. 317, 415 A.2d 967 (1980), this court held that the PUC had not disobeyed the direction of Pa. R.A.P. 1701, providing that governmental units may not proceed after an appeal taken from their orders, by issuing an order to be effective upon withdrawal of the appeal. Therefore, it would seem that the PUC's conditional order only ensured the legitimacy of the relief the city was seeking—modification of the order complained of.

Finally, the city complains of the direction that it install highway traffic signals at its initial cost and expense, the matter of the final allocation of these costs to be held in abeyance until completion of the project. This was not a final order with respect to the costs of this item and is therefore an order not yet subject to review.

Orders affirmed.

ORDER IN 2320 C.D. 1981

AND Now, this 11th day of April, 1983, the order of the Pennsylvania Public Utility Commission entered on August 21, 1981 is hereby affirmed.

ORDER IN 3278 C.D. 1981

AND Now, this 11th day of April, 1983, the order of the Pennsylvania Public Utility Commission entered on December 2, 1981 is hereby affirmed.