# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Capital City Cab Service,           :
                                        :
                 Petitioner       :
                                          :
              v.                     :     No. 238 C.D. 2015
                                          :
Pennsylvania Public Utility       :
Commission,                           :
                                          :
                 Respondent    :

Keystone Cab Service, Inc., Good    :
Cab, LLC, United Cab, LLC, EZ     :
Taxi, LLC,                           :
                                          :
                 Petitioners     :
                                          :
              v.                     :     No. 240 C.D. 2015
                                          :
Pennsylvania Public Utility       :
Commission,                           :
                                          :
                 Respondent    :

Executive Transportation Co. Inc.,   :
Aceone Trans Co., AF Taxi, Inc.,    :
AG Taxi, Inc., AGB Trans, Inc.,     :
Almar Taxi, Inc., TS Cab, Inc, BAG   :
Trans, Inc., BNG Cab Co., BNA Cab   :
Co., BNJ Cab, Inc., Bond Taxi, Inc.,   :
BSP Trans, Inc., Double A Cab Co.,   :
FAD Trans, Inc., GA Cab, Inc.,     :
GD Cab, Inc., GN Trans, Inc., God   :
Bless America Trans, Inc., Grace    :
Trans, Inc., IA Trans, Inc., Jarnail   :
Taxi, Inc., Jaydan, Inc. LAN Trans,   :
Inc., LMB Taxi, Inc. MAF Trans,    :
Inc., MDS Cab, Inc., MG Trans Co.,   :
Noble Cab, Inc., Odessa Taxi, Inc.,   :

RAV Trans, Inc., Rosemont Taxicab :
Co, Inc., S&S Taxi Cab, Inc., :
SAJ Trans, Inc., Saba Trans, Inc., :
SF Taxi, Inc., Society Taxi, Inc., :
Steele Taxi, Inc., TGIF Trans, Inc., :
V&S Taxi, Inc., VAL Trans, Inc., :
VB Trans, Inc., and VSM Trans, Inc. :
BM Enterprises, Inc., t/a A.G. Taxi, :
Bucks County Services, Inc., Dee :
Dee Cab Company, Germantown :
Cab Company, Ronald Cab, Inc., :
t/a Community Cab, Shawn Cab, :
Inc., t/a Delaware County Cab, :
and Sawink, Inc., t/a County Cab, :
:
Petitioners :
:
v. : No. 253 C.D. 2015
:
Pennsylvania Public Utility : Argued: December 9, 2015
Commission, :
:
Respondent :


BEFORE:　HONORABLE DAN PELLEGRINI, President Judge[1]
HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[2]
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE MARY HANNAH LEAVITT, Judge[3]
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[3] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

**OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: April 19, 2016**

These consolidated Petitions for Review involve a multi-party, multi-application proceeding before the Pennsylvania Public Utility Commission (PUC). Two PUC Orders are at issue: (1) the December 5, 2014 Opinion and Order granting Rasier-PA, LLC (Rasier) statewide authorization at PUC Docket No. A-2014-2424608; and (2) the January 29, 2015 Opinion and Order denying the Petition for Reconsideration of the December 5, 2014 Opinion and Order filed by Executive Transportation Company, Inc., et al. (Executive). The December 5, 2014 Opinion and Order provided that the PUC would issue a Certificate of Public Convenience (CPC) evidencing Rasier's right to operate as an experimental common carrier if Rasier filed its Statewide Compliance Plan (Compliance Plan).[4]

Petitioners are existing taxi cab companies that provide services in the areas proposed to be served by Rasier. Petitioner Capital City Cab Service (Capital) argues that the PUC failed to follow its regulations and abused its discretion when it issued the December 5, 2014 Opinion and Order, and that the PUC's decision is not supported by substantial evidence. Petitioner Keystone Cab Service, Inc., et al., (Keystone) argues that the PUC erred by misapplying its regulations, by finding that Rasier was an experimental service, and by reversing the decisions of the PUC's Administrative Law Judges (ALJs) without substantial evidence. Executive argues that the PUC abused its discretion when it denied reconsideration because Rasier proposed to provide transportation service as a carrier without

[4] Related to these matters is Executive's appeal of the PUC's denial of reconsideration of Rasier's Allegheny County authorization at PUC Docket No. A-2014-2416127 (on appeal at No. 252 C.D. 2015).

2

having custody of any vehicles and therefore the PUC lacked jurisdiction to adjudicate Rasier's Application.[5] For the following reasons, we affirm.

Rasier is a wholly-owned subsidiary of Uber Technologies, Inc. (Uber). (Hr'g Tr., August 18, 2014 at 53, 60, R.R. at 211, 218.)[6] On June 2, 2014, Rasier filed with the PUC an Application (Application) for experimental service offering passenger trips between points in Pennsylvania[7]. Uber owns the smartphone

---

[5] Executive states in its brief that it seeks review of the January 29, 2015 Opinion and Order denying its Petition for Reconsideration of the December 5, 2014 Opinion and Order. (Executive's Br. at 1.) As such, the merits of the December 5, 2014 Opinion and Order are not directly before us at No. 253 C.D. 2015. As we note subsequently here and in more detail in our Opinion at No. 252 C.D. 2015, Executive challenged the PUC's jurisdiction to consider Rasier's Application before the ALJs, again before the PUC on *de novo* review, and again in its Petition for Reconsideration. However, the PUC's jurisdiction is not implicated directly by our review of the denial of reconsideration as we look simply to whether the issues raised on reconsideration were considered previously during the review of Rasier's Application. We nonetheless address Executive's argument that the PUC lacks authority even to consider Rasier's Application as it provides important guidance with regard to the experimental service provisions at 52 Pa. Code § 29.352, and the PUC fully addresses the issue in its brief. Thus, we can conduct effective appellate review of this question notwithstanding Executive's limiting its appeal to the denial of reconsideration. Moreover, it is black letter law that issues concerning an agency's jurisdiction are never waived and can be raised sua sponte by the court. Blackwell v. State Ethics Commission, 567 A.2d 630, 636 (Pa. 1989).

[6] The hearing transcript is from the hearing on the Application held before the ALJs.

[7] The PUC's regulation at 52 Pa. Code § 29.352 governs certification for the provision of experimental service, and provides as follows:

> In order to advance and promote the public necessity, safety and convenience, the Commission may, upon application, grant a new certificate or an amendment to an existing certificate in order to allow to be provided a new, innovative or experimental type or class of common carrier service. An application for a certificate or amendment shall state that it is an application for an experimental service. Holders of experimental certificates shall abide by this chapter except those which the Commission shall explicitly state do not apply.

*(Continued…)*

application, digital platform, and technology (App) Rasier has licensed. Rasier uses the App to offer transportation to the public for compensation using non-certificated drivers operating their personal vehicles. (Hr'g Tr. at 57, 75, 77, 90, 101-02, 262-63, R.R. at 215, 233, 235, 248, 259-60, 420-21.) Potential customers create a user account with Uber and proffer an acceptable form of electronic payment. (Hr'g Tr. at 55-57, R.R. at 213-15.) A customer who requests a ride is paired by the App with the nearest driver available to accept passengers. The App notifies the rider who then views a map showing the driver's location, the driver's photograph, the vehicle type used by the driver, its license plate number, and an estimated time of arrival. (Hr'g Tr. at 58, R.R. at 216.) Upon arrival, the driver provides a ride as directed. The App charges the customer electronically when the customer exits the driver's vehicle. (Hr'g Tr. at 56, R.R. at 214.) Rasier in its Application described its services as follows:

> Applicant proposes to use a digital platform to connect passengers to independent ride-sharing operators ("Operators") with whom Applicant intends to contract. Operators will use their personal, noncommercially licensed vehicles for the purpose of providing transportation services. The Applicant plans to license the Uber technology to generate leads from riders who need transportation services. Applicant does not own vehicles, employ drivers or transport passengers.

(Application ¶ 14, R.R. at 4.)

---

Holders of experimental certificates shall abide by an[y] additional regulations or requirements, including informational and reporting requirements, which the Commission shall stipulate upon granting the certificate. A certificate for experimental service shall be valid only until the service is abandoned, until 2 years have elapsed from the time the certificate was approved or until the Commission enacts amendments to this chapter pertaining to the new class of service represented by the experimental service, whichever event occurs first.

Following protests to its Application, Rasier amended it to add the following restrictions to its operating authority:

> To transport, by motor vehicle, persons in the experimental service of shared-ride network for passenger trips between points in Pennsylvania, excluding trips which originate or terminate at points in the Counties of Beaver, Clinton, Columbia, Crawford, Lawrence, Lycoming, Mercer, Montour, Northumberland and Union and in that portion of the County of Luzerne which is located within an airline distance of 15 statute miles of the limits of the Borough of Berwick, Columbia County.

(Restrictive Amendment and Stipulation ¶ 1, R.R. at 71.)

The various Petitioners filed protests, and Rasier filed Preliminary Objections (POs) thereto. The Application, protests, and POs were assigned to two Administrative Law Judges (ALJs), who denied the POs. Thereafter, the ALJs held combined evidentiary hearings on Rasier's Application and on Rasier's separate application for authorization to operate in Allegheny County (Allegheny Application).

On September 25, 2014, the ALJs issued a Recommended Decision in which they determined that the PUC had jurisdiction over the Application because Rasier intended to provide "experimental service" per 52 Pa. Code § 29.352. (Recommended Decision, R.R. at 777-820.) On that basis, the ALJs concluded that Rasier must obtain a CPC in order to facilitate transportation service within the Commonwealth. However, the ALJs found that Rasier failed to meet its burden of proof under 52 Pa. Code § 41.14, which is the PUC's statement of policy regarding

5

the evidentiary criteria used to decide motor carrier applications.[8]  As a result, the ALJs denied the Application.  Rasier and various Petitioners filed Exceptions to the Recommended Decision and Replies thereto.

[8] This statement of policy provides:

(a) An applicant seeking motor common carrier authority has a burden of demonstrating that approval of the application will serve a useful public purpose, responsive to a public demand or need.

(b) An applicant seeking motor common carrier authority has the burden of demonstrating that it possesses the technical and financial ability to provide the proposed service. In addition, authority may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally. In evaluating whether a motor carrier applicant can satisfy these fitness standards, the Commission will ordinarily examine the following factors, when applicable:

(1) Whether an applicant has sufficient capital, equipment, facilities and other resources necessary to serve the territory requested.

(2) Whether an applicant and its employees have sufficient technical expertise and experience to serve the territory requested.

(3) Whether an applicant has or is able to secure sufficient and continuous insurance coverage for all vehicles to be used or useful in the provision of service to the public.

(4) Whether the applicant has an appropriate plan to comply with the Commission's driver and vehicle safety regulations and service standards contained in Chapter 29 (relating to motor carriers of passengers).

(5) An applicant's record, if any, of compliance with 66 Pa.C.S. (relating to the Public Utility Code), this title and the Commission's orders.

(6) Whether an applicant or its drivers have been convicted of a felony or crime of moral turpitude and remains subject to supervision by a court or correctional institution.

(c) The Commission will grant motor common carrier authority commensurate with the demonstrated public need unless it is established that the entry of a new

*(Continued…)*

6

Based upon *de novo* review of the record and the Recommended Decision to deny Rasier's Application, the PUC conditionally authorized Rasier to provide experimental service at its November 13, 2014 Public Meeting and entered an Opinion and Order on December 5, 2014. (December 5, 2014 Opinion and Order, R.R. at 895-982.) In its December 5, 2014 Opinion and Order, the PUC determined that its jurisdiction over common carriers is not limited to carriers that own vehicles. The PUC also determined that Rasier's service is experimental because its business model did not easily conform to any existing category of regulated common carriage. The PUC found that it could authorize Rasier as a common carrier because the full record met the evidentiary standards at 52 Pa Code § 41.14, and Appendix A of the December 5, 2014 Opinion and Order,[9] imposes significant ongoing operating and compliance conditions designed to achieve an appropriate balance of market flexibility and public safety in accord with the Public Utility Code.[10] Thus, the PUC indicated that it would issue a CPC allowing Rasier to operate as an experimental common carrier once Rasier filed a Compliance Plan. Rasier filed its Compliance Plan on December 24, 2015, addressing the conditions set forth in Appendix A of the December 5, 2014

---

carrier into the field would endanger or impair the operations of existing common carriers to an extent that, on balance, the granting of authority would be contrary to the public interest.

(d) Subsections (a) and (c) do not apply to an applicant seeking authority to provide motor carrier of passenger service under §§ 29.331 -- 29.335 (relating to limousine service).

52 Pa. Code § 41.14.

[9] Appendix A, R.R. at 979-82.

[10] 66 Pa. C.S. §§ 101-3316.

7

Opinion and Order regarding driver integrity, vehicle safety, adequate insurance, and other provisions. By Order entered January 29, 2015, the PUC approved the Compliance Plan (Compliance Order) and authorized Rasier to operate in accordance with the December 5, 2014 Opinion and Order. No party appealed the Compliance Order.

Executive filed the Petition for Reconsideration on December 22, 2014, which Rasier answered on January 2, 2015. In addition to entering the Compliance Order on January 29, 2015, the PUC denied Executive's Petition for Reconsideration. Capital, Keystone, and Executive, among others, petitioned this Court for review, and we consolidated those matters for consideration.[11]

Executive argues that the PUC lacks jurisdiction because Rasier is neither "fish nor fowl" under the Public Utility Code categories of "common carrier"[12] or

---

[11] Our review is limited to determining if a constitutional violation or error has occurred; if the decision is in accordance with law; and if substantial evidence supports necessary findings of fact. PECO Energy Co. v. Pennsylvania Public Utility Commission, 791 A.2d 1155, 1160 (Pa. 2002); 2 Pa. C.S. § 704. Evidence is substantial when relevant and of a nature that a reasonable mind might accept as adequate to support a conclusion. Lancaster County v. Pennsylvania Labor Relations Board, 82 A.3d 1098, 1109-10 (Pa. Cmwlth. 2013). We review a denial of reconsideration for abuse of discretion. J.A.M. Cab Company, Inc. v. Pennsylvania Public Utility Commission, 572 A.2d 1317, 1318 (Pa. Cmwlth. 1990). PUC abuses its discretion if the denial of reconsideration demonstrates bad faith, fraud, capricious action, or abuse of power. Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission, 535 A.2d 1246, 1248 (Pa. Cmwlth 1988).

[12] Section 102 of the Public Utility Code sets forth the following relevant definitions for this term:

"Common carrier." Any and all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the

*(Continued…)*

8

public for the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by, through, over, above, or under land, water, or air, and shall include forwarders, but shall not include contract carriers by motor vehicles, or brokers, or any bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis.

*"Common carrier by motor vehicle."* Any common carrier who or which holds out or undertakes the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation, whether or not the owner or operator of such motor vehicle, or who or which provides or furnishes any motor vehicle, with or without driver, for transportation or for use in transportation of persons or property as aforesaid, and shall include common carriers by rail, water, or air, and express or forwarding public utilities insofar as such common carriers or such public utilities are engaged in such motor vehicle operations, but does not include:

(1) A lessor under a lease given on a bona fide sale of a motor vehicle where the lessor retains or assumes no responsibility for maintenance, supervision, or control of the motor vehicles so sold.

(2) Transportation of school children for school purposes or to and from school-related activities whether as participants or spectators, with their chaperones, or between their homes and Sunday school in any motor vehicle owned by the school district, private school or parochial school, or transportation of school children between their homes and school or to and from school-related activities whether as participants or spectators, with their chaperones, if the person performing the school-related transportation has a contract for the transportation of school children between their homes and school, with the private or parochial school, with the school district or jointure in which the school is located, or with a school district that is a member of a jointure in which the school is located if the jointure has no contracts with other persons for the transportation of students between their homes and school, and if the person maintains a copy of all contracts in the vehicle at all times, or children between their homes and Sunday school in any motor vehicle operated under contract with the school district, private school or parochial school. Each school district shall adopt regulations regarding the number of chaperones to accompany students in connection with school-related activities.

(3) Any owner or operator of a farm transporting agricultural products from, or farm supplies to, such farm, or any independent contractor or cooperative

*(Continued…)*

"broker."[13] Executive argued this issue at the hearing, in briefs and in Exceptions, filed a Petition for Reconsideration, and now challenges the PUC's January 29,

---

agricultural association hauling agricultural products or farm supplies exclusively for one or more owners or operators of farms.

(4) Any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated and road construction materials. This paragraph does not include the use or furnishing of five-axle tractor trailers.

(5) Transportation of property by the owner to himself, or to purchasers directly from him, in vehicles owned and operated by the owner of such property and not otherwise used in transportation of property for compensation for others.

(6) Transportation of voting machines to and from polling places by any person or corporation for or on behalf of any political subdivision of this Commonwealth for use in any primary, general, municipal or special election.

(7) Transportation of pulpwood, chemical wood, saw logs or veneer logs from woodlots.

(8) Transportation by towing of wrecked or disabled motor vehicles.

(9) Any person or corporation who or which furnishes transportation for any injured, ill or dead person.

66 Pa. C.S. § 102.

[13] Section 2501(b) of the Public Utility Code defines "Broker" as:

**"Broker."** Any person or corporation not included in the term "motor carrier" and not a bona fide employee or agent of any such carrier, or group of such carriers, who or which, as principal or agent, sells or offers for sale any transportation by a motor carrier, or the furnishing, providing, or procuring of facilities therefor, or negotiates for, or holds out by solicitation, advertisement, or otherwise, as one who sells, provides, furnishes, contracts, or arranges for such transportation, or the furnishing, providing, or procuring of facilities therefor, other than as a motor carrier directly or jointly, or by arrangement with another motor carrier, and who does not assume custody as a carrier.

66 Pa. C.S. § 2501(b).

*(Continued…)*

10

2015 Opinion and Order denying reconsideration. Capital and Keystone argue that the record lacked substantial evidence to support the PUC's findings under 52 Pa. Code § 41.14, which is used to determine motor carrier market entry. Keystone also argues that Rasier's Transportation Network Company (TNC) service[14] is an ordinary taxi service not eligible for consideration as an experimental service under 52 Pa. Code § 29.352.

The PUC contends Petitioners' arguments focus on the Application as filed and the ALJs' Recommended Decision, neither of which was approved by the PUC, and further, that Petitioners fail to acknowledge how the December 5, 2014 Opinion and Order substantially modified Rasier's Application to ensure operation in the public interest and in compliance with applicable law. The PUC points out that Appendix A of the December 5, 2014 Opinion and Order provides detailed requirements for insurance, driver integrity, vehicle safety, record keeping reports, and audits. Rasier is required to submit quarterly filings to the PUC that demonstrate continued compliance with each requirement, and Rasier's failure to comply with any of the requirements may result in the revocation of Rasier's operating authority.

---

[14] The PUC, in its brief in the related matter at No. 252 C.D. 2015 at page 4, describes a TNC generally as:

> a fee-based motor carrier employing various modes of mobile digital computing to connect passengers with prequalified drivers of passenger vehicles. TNCs utilize electronic and social media forms of communication, including mobile applications and web-based reservation services, to facilitate these connections. The TNC business model generally does not seek to own vehicles or employ drivers.

(The PUC's 252 C.D. 2015 Br. at 4.)

The PUC further posits that the Public Utility Code authorizes conditional approval and modifications of CPC applications, and that conditional approval is appropriate in the case of experimental common carrier market entry. It points out that Pennsylvania courts have determined that the Public Utility Code encourages flexibility in motor common carrier market entry. Hence, the PUC is not to limit otherwise lawful market entry unless such entry would result in unrestrained and destructive competition. In addition to Rasier's presentation of substantial evidence of demand or need, there is record evidence to show that: there is an emerging nascent market for TNC services; there is significant public demand for such services; and Rasier is one of multiple participants in that market. The PUC argues that the December 5, 2014 Opinion and Order reflects a cautious policy of safely accommodating public demand for the convenience offered by TNC services, and that we should affirm the Order.

As a preliminary matter, we address the PUC's role in the provision of public utility services. Among its other responsibilities under the Public Utility Code, the PUC necessarily regulates how various utilities are impacted by technological advances. See, e.g., Popowsky v. Pennsylvania Public Utility Commission, 937 A.2d 1040 (Pa. 2007) (addressing impacts of Verizon-MCI merger on telecommunication services); Pottsville Union Traction Company v. Pennsylvania Public Service Commission, 67 Pa. Super. 301 (1917) (bus routes versus electric railways). Here, as characterized by the PUC, "the major innovation of the TNC model is its ability to utilize so-called non-professional drivers in private vehicles to provide transportation service during periods of peak

demand -- without excess carrying costs traditionally associated with managing volatile demand peaks." (The PUC's Br. at 14.) Given that rubric, we agree with the PUC that the experimental service regulation at 52 Pa. Code § 29.352 accommodates forms of motor carrier service not specifically enumerated in the Public Utility Code or in the PUC's regulations on a provisional basis "to advance and promote the public necessity, safety and convenience."

As to the PUC's jurisdiction, Executive contends that the PUC lacks authority even to consider Rasier's Application because it does not have custody of any vehicles. While we agree that Rasier's TNC service does not fit neatly into any existing category of passenger service, we note that the PUC is entitled to deference when it applies the experimental service regulation to find jurisdiction over TNC services. See Popowsky, 937 A.2d at 1058-59 (holding that with regard to "recent and revolutionary changes affecting the telecommunications industry," PUC's "judgments concerning weight and balancing of associated policy considerations connected with utility certification is . . . entitled to . . . considerable deference"). The Public Utility Code's definition of "[c]ommon carrier by motor vehicle" in Section 102 states that PUC has jurisdiction over common carriers "whether or not [the carrier is] the owner or operator of such motor vehicle." 66 Pa. C.S. § 102. Thus, the Public Utility Code does not require that a carrier have custody of any vehicles and so does not exclude the type of services offered by Rasier. Here, Rasier proposes to provide transportation services to the public for compensation "whether or not [Rasier is] the owner or operator of such motor vehicle." Id. We, thus, conclude that the PUC appropriately exercised jurisdiction over Rasier's TNC services under the category of "[c]ommon carrier by motor

13

vehicle," 66 Pa. C.S. § 102, and the experimental service provision of the regulations, 52 Pa. Code § 29.352.

Turning now to Petitioners' assertions regarding substantial evidence, we first address their assertion that the record lacked substantial evidence to support the PUC's findings under 52 Pa. Code § 41.14. As evidenced by the title of that provision, 52 Pa. Code § 41.14 is a statement of policy rather than a binding norm. Section 41.14(a) and (b) establish the burden for both applicants and challengers by stating what quantum of evidence is required from an applicant. Subsection 41.14(c) provides the evidence needed from an existing carrier seeking to challenge the market entry of a new competing carrier, and imposes a heavy burden on the challenger. A demonstration of mere business attrition of a competitor is insufficient to deny a CPC, Railway Express Agency, Inc. v. Pennsylvania Public Utility Commission, 171 A.2d 860, 863-64 (Pa. Super. 1961), and proof of adequate market service does not bar entry of new applicants, Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission, 512 A.2d 1359, 1360-61 (Pa. Cmwlth. 1986). However, an existing carrier may prevent a new applicant's market entry by showing that public harm would result because of unrestrained and destructive competition in the proposed market. Seaboard Tank Lines, Inc. v. Pennsylvania Public Utility Commission, 502 A.2d 762, 765 (Pa. Cmwlth. 1985). Our review of the record indicates that the PUC's findings are supported by substantial evidence and that Petitioners did not meet their burden to show that Rasier's TNC service would result in unrestrained or destructive competition.

14

The PUC found in the December 5, 2014 Opinion and Order that: there is a demand or need for Rasier's TNC service; Rasier has the technical and financial ability to provide the proposed experimental service; Rasier established that it had the capital, equipment, and other resources necessary to provide experimental service; Rasier possesses the technical expertise to operate its experimental service; Rasier will secure sufficient and continuous insurance coverage for all vehicles to be used or useful in the provision of service to the public; and, Rasier has an appropriate plan to comply with the Commission's driver and vehicle safety regulations and service standards.

As to the demand or need for Rasier's services, we have held that "'[a]n applicant is not required to show demand for its service at every point in the proposed territory; it is sufficient to show that need exists within the area generally served.'" Ace Moving & Storage, Inc. v. Pennsylvania Public Utility Commission, 935 A.2d 75, 78 (Pa. Cmwlth. 2007) (quoting Yellow Cab Company v. Public Utility Commission, 673 A.2d 1015, 1018 (Pa. Cmwlth. 1996)); Morgan Drive Away, Inc., 512 A.2d at 1360 (it is sufficient to demonstrate a cross-section of demand or need in service territory). Here, the record shows the existence of customer demand and/or need for the TNC category of service proposed by Rasier.

Testimony by a Rasier competitor regarding a successful online and mobile app and web platform called Cabbygo that began in Pittsburgh in 2013 and in Harrisburg in 2014 shows a demand for these types of services. (Hr'g Tr. at 187-88, R.R. at 345-46.) In addition, the PUC points to the fact that it has recently authorized TNC services other than Rasier's. (The PUC's Br. at 15, 25-27, 34.)

15

The record also contains testimony that establishes need as multiple witnesses testified that their needs are better served by TNC-type services as opposed to traditional taxi services. (Hr'g Tr. at 35-37, 42-43, 158-70, 179-80, R.R. at 193-95, 200-01, 316-28, 337-38.) Based upon our review, we conclude that this testimony demonstrates the necessary customer demand or need for Rasier to meet its burden.

With regard to whether Rasier possesses the technical and financial ability to provide the experimental TNC service required by 52 Pa. Code § 41.14(b), we likewise conclude that there is substantial evidence to support the PUC's findings. Subsumed in this examination are the factors outlined in the December 5, 2014 Opinion and Order as outlined above. Petitioners Capital and Keystone focus first on the period of time that Rasier operated without PUC authorization, suggesting Rasier thus has a propensity to operate illegally. The PUC addressed Rasier's prior unauthorized provision of TNC services in the December 5, 2014 Opinion and Order and suggests that the requirements in Appendix A to the December 5, 2014 Opinion and Order will address Rasier's operations going forward, noting that it is prosecuting a complaint for the prior unauthorized operation against Rasier's parent, Uber, at Pa. Public Utility Commission, Bureau of Investigation and Enforcement v. Uber Technologies, Inc. et al., Docket No. C-2014-2422723. Given that Rasier now is operating under the PUC's authorization, we conclude that the PUC did not err in finding that Rasier does not have a "propensity" to operate illegally. See Brinks, Inc. v. Pennsylvania Public Utility Commission, 456 A.2d 1342, 1344 (Pa. 1983) (holding that "the mere fact of prior operation in violation of a court order or the Commission's authority does not preclude a carrier

from obtaining lawful authority in a subsequent proceeding before the Commission.").

As to whether Rasier established that it had the capital, equipment, and other resources necessary to provide experimental service, the PUC noted that Rasier was licensing the Uber App and that it is wholly owned by Uber, thus providing Rasier access to Uber's financial resources. The PUC also found persuasive that Rasier has successfully operated similar ventures in Washington D.C. and cities throughout the United States. (December 5, 2014 Opinion and Order at 72.) The PUC also noted that Rasier will not own vehicles or employ drivers, and concluded that under these specific facts, Rasier established that it has the necessary capital, equipment, and other resources. (December 5, 2014 Opinion and Order at 72.) Given that the PUC is entitled to considerable deference in the construction and application of its regulations, Popowsky, 937 A.2d at 1058-59, we cannot say that this is error.

We, likewise, conclude that Rasier will have sufficient technical expertise and experience to provide its proposed TNC service. The December 5, 2014 Opinion and Order details that Rasier would use employees within its management structure to facilitate operational functions, such as regulatory compliance, assisting operators, handling complaints, auditing documents, and suspending drivers. (December 5, 2014 Opinion and Order at 40-45.) The PUC reasoned that Uber and its employees have successfully started and operated similar ventures in 160 cities and 40 countries around the world, including Washington D.C., which, although larger, would serve as an analogous market to Pennsylvania cities.

17

(December 5, 2014 Opinion and Order at 40-45.) As noted previously, the December 5, 2014 Opinion and Order also required Rasier to file a Compliance Plan, in accordance with Appendix A, detailing how it would operate in conformance with its CPC during the two-year experimental authorization.

As to insurance coverage, we note that the PUC provided a detailed discussion on this issue in its December 5, 2014 Opinion and Order. (December 5, 2014 Opinion and Order at 41-58.) The PUC examined how Rasier proposed to comply with the insurance requirements of 52 Pa. Code § 41.14(b)(3), and also examined the testimony of Uber's Director of insurance and risk management. Moreover, the PUC also established additional insurance compliance conditions prior to Rasier's exercise of experimental operating authority. (December 5, 2014 Opinion and Order at 54-55.) Given this thorough discussion and the record evidence, we conclude that the PUC's finding that Rasier will have sufficient insurance coverage is well supported.

The last factor is whether Rasier has an appropriate plan to comply with the PUC's driver and vehicle safety regulations and service standards. The PUC concluded that the criminal background checks and driving history record review proposed by Rasier exceeded the requirements of its regulations. (December 5, 2014 Opinion and Order at 34-35.) The PUC required Rasier to conduct criminal and driver history record checks both at the time of driver sign-up and annually thereafter, and to retain the records for two years and three years, respectively. (December 5, 2014 Opinion and Order at 35-36.) As to vehicles, the PUC established additional conditions for the operation of vehicles by Rasier drivers

over and above those proposed by Rasier. (December 5, 2014 Opinion and Order at 36.) Specifically, the PUC required Rasier to "ensure that the vehicles used in its operation[s] successfully pass PennDOT inspections" annually, and to maintain verifiable records of such for three years. (December 5, 2014 Opinion and Order at 39-40.) The PUC also required Rasier to ensure that the vehicles used "remain in continuous compliance with the [PUC's] vehicle standards at 52 Pa. Code §§ 29.402(1) and (2) and 29.403," that those vehicles "be subject to periodic inspection as set forth at 52 Pa. Code §§ 29.406 and 29.407," and that Rasier "maintain verifiable records thereof for three years." (December 5, 2014 Opinion and Order at 40.) Finally, the PUC required that Rasier "not permit the use of vehicles older than eight model years," and that it "maintain verifiable records thereof for three years." (December 5, 2014 Opinion and Order at 40.) Given the record and the PUC's placement of additional requirements on Rasier's operations, we conclude that there is substantial evidence to support the PUC's finding.

With regard to the arguments that the PUC erred or abused its discretion in rejecting the ALJs' Recommended Decision, the PUC is the ultimate finder of fact where it reviews an ALJ decision. Lloyd v. Pennsylvania Public Utility Commission, 17 A.3d 425, 429 (Pa. Cmwlth. 2011). This Court has held that an ALJ decision may be superseded by a contrary decision of the PUC that is based on substantial evidence. Pennsylvania Retailers' Associations v. Pennsylvania Public Utility Commission, 440 A.2d 1267, 1272 (Pa. Cmwlth. 1982). As noted above, evidence is substantial when relevant and of a nature that a reasonable mind might accept as adequate to support a conclusion. Lancaster County v. Pennsylvania Labor Relations Board, 82 A.3d 1098, 1109-10 (Pa. Cmwlth. 2013).

Here, as described above, the record contains evidence that, viewed through this standard, supports the PUC's findings. In addition, our decision in Pennsylvania Retailers' Associations does not support Petitioners' assertion that the PUC overrode the ALJs' Recommended Decision without substantial evidence or sufficient reason. Therein, we stated that the Public Utility Code "provides that [PUC] when it reviews the initial decision of a presiding officer 'has all the powers which it would have in making the initial decision. . . .' A broader grant of power to the [PUC] in the disposition of initial decisions in case[s] it chooses to review can scarcely be imagined." Pennsylvania Retailers' Associations, 440 A.2d at 1273 (quoting G.G. & C. Bus Company v. Pennsylvania Public Utility Commission, 400 A.2d 941, 944 (Pa. Cmwlth. 1979)). We, thus, find no error on this basis.

Having resolved the general allegations of error asserted, we now turn to the more specific issues raised by Petitioners. Petitioner Capital argues that the Rasier tariffs filed throughout the proceedings, including as recently as March 15, 2015, have not met the requirements of 52 Pa. Code § 23.11[15] (regarding the filing of

---

[15] This regulation provides as follows:

(a) Before any carrier furnishes or offers to furnish any service, it shall file with the Commission tariffs showing the rates or other compensation demanded for such service, including COD services, and all rules governing the furnishing of the service or the application of the rates demanded therefor, if the filing of a tariff with the Commission is not construed as an approval by it of the rates or rules contained therein, or as a waiver of any other requirement of 66 Pa.C.S. §§ 101--3315.

(b) The tariffs of carriers also subject to the jurisdiction of a Federal regulatory
*(Continued…)*

20

rates) because of a lack of specificity. Capital did not file exceptions raising this issue, and, therefore, it is not preserved for our review. Pittsburgh-Johnstown-Altoona Express, Inc. v. Pennsylvania Public Utility Commission, 554 A.2d 137, 145 (Pa. Cmwlth. 1989). However, we note that the December 5, 2014 Opinion and Order considered the rates charged by Rasier in the context of the Allegheny Application. Based on our review of the record, we agree with the PUC that Rasier's tariff reflects the circumstances of Pennsylvania's TNC market, i.e., the economic climate in which Rasier will operate and, thus, hold that Capital's argument, even if preserved, would fail.

Executive argues that the PUC abused its discretion when it denied Executive's Petition for Reconsideration in the January 29, 2015 Opinion and Order. We find no error on review.[16] Executive's jurisdictional and custody and control issues raised in the Petition for Reconsideration were not new issues. They were discussed and addressed both in the Recommended Decision and in the December 5, 2014 Opinion and Order. On that basis, the PUC did not abuse its discretion in denying reconsideration. J.A.M. Cab Company, Inc. v. Pennsylvania Public Utility Commission, 572 A.2d 1317, 1318 (Pa. Cmwlth. 1990).

body shall correspond, so far as practicable, to the form of those prescribed by such Federal agency.

52 Pa. Code § 23.11.

[16] In the companion case to this one at No. 252 C.D. 2015, the sole issue presented is Executive's assertion that the PUC abused its discretion when it denied reconsideration where the PUC lacks jurisdiction to adjudicate Rasier's Allegheny Application because Rasier proposed to provide transportation service as a carrier without having custody of any vehicles. In that opinion we extensively reviewed the basis for the PUC's denial of reconsideration and concluded that the PUC did not err as Executive's arguments were raised and addressed at multiple levels before the Petition for Reconsideration was filed. The same result applies here.

In summary, the PUC's conditional approval of Rasier's TNC service in the December 5, 2014 Opinion and Order requires Rasier to address public demand in a safe and cost-effective manner. As the PUC points out, and we agree, the December 5, 2014 Opinion and Order is consistent with other recent TNC approvals and is a reasonable and factually supported determination. Determinations of this type are properly reserved to the exercise of PUC discretion. Waltman v. Pennsylvania Public Utility Commission, 596 A.2d 1221, 1225 (Pa. Cmwlth. 1991), disagreed with on other grounds by Bethlehem Steel Corporation v. Pennsylvania Public Utility Commission, 713 A.2d 1110 (Pa. 1998). For these reasons, we affirm the December 5, 2014 Opinion and Order and the January 29, 2015 Opinion and Order denying Executive's December 22, 2014 Petition for Reconsideration.

_____
**RENÉE COHN JUBELIRER, Judge**

President Judge Pellegrini concurs in result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Capital City Cab Service,                          :
                                              :
      Petitioner   :
                                              :
      v.            :   No. 238 C.D. 2015
                                              :
Pennsylvania Public Utility                        :
Commission,                                        :
                                              :
      Respondent  :

Keystone Cab Service, Inc., Good                   :
Cab, LLC, United Cab, LLC, EZ                       :
Taxi, LLC,                                          :
                                              :
      Petitioners :
                                              :
      v.            :   No. 240 C.D. 2015
                                              :
Pennsylvania Public Utility                        :
Commission,                                        :
                                              :
      Respondent  :

Executive Transportation Co. Inc.,                 :
Aceone Trans Co., AF Taxi, Inc.,                   :
AG Taxi, Inc., AGB Trans, Inc.,                    :
Almar Taxi, Inc., TS Cab, Inc, BAG                 :
Trans, Inc., BNG Cab Co., BNA Cab                  :
Co., BNJ Cab, Inc., Bond Taxi, Inc.,              :
BSP Trans, Inc., Double A Cab Co.,                 :
FAD Trans, Inc., GA Cab, Inc.,                     :
GD Cab, Inc., GN Trans, Inc., God                  :
Bless America Trans, Inc., Grace                   :
Trans, Inc., IA Trans, Inc., Jarnail               :
Taxi, Inc., Jaydan, Inc. LAN Trans,                :
Inc., LMB Taxi, Inc. MAF Trans,                    :
Inc., MDS Cab, Inc., MG Trans Co.,                 :
Noble Cab, Inc., Odessa Taxi, Inc.,                :

RAV Trans, Inc., Rosemont Taxicab  
Co, Inc., S&S Taxi Cab, Inc.,  
SAJ Trans, Inc., Saba Trans, Inc.,  
SF Taxi, Inc., Society Taxi, Inc.,  
Steele Taxi, Inc., TGIF Trans, Inc.,  
V&S Taxi, Inc., VAL Trans, Inc.,  
VB Trans, Inc., and VSM Trans, Inc.  
BM Enterprises, Inc., t/a A.G. Taxi,  
Bucks County Services, Inc., Dee  
Dee Cab Company, Germantown  
Cab Company, Ronald Cab, Inc.,  
t/a Community Cab, Shawn Cab,  
Inc., t/a Delaware County Cab,  
and Sawink, Inc., t/a County Cab,

      Petitioners

   v.     : No. 253 C.D. 2015

Pennsylvania Public Utility  
Commission,

      Respondent

## O R D E R

NOW, this 19th day of April, 2016, the Public Utility Commission's December 5, 2014 Opinion and Order and the January 29, 2015 Opinion and Order denying Executive Transportation Co. Inc., et al.'s December 22, 2014 Petition for Reconsideration are **AFFIRMED**.

_____  
**RENÉE COHN JUBELIRER, Judge**