# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Executive Transportation Co., Inc.,   :
                                     :
                    Petitioner   :
                                       :
                      v.              :   No. 252 C.D. 2015
                                       :
Pennsylvania Public Utility      :   Argued: December 9, 2015
Commission,                      :
                                       :
                 Respondent   :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
                HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[2]
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge[3]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                 **FILED: April 22, 2016**

Executive Transportation Co., Inc., (Executive) petitions for review of the Pennsylvania Public Utility Commission's (PUC) January 29, 2015 Opinion and Order denying Executive's Petition for Reconsideration of one of two opinions and

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[3] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

orders issued by the PUC on December 5, 2014. The PUC, in the December 5, 2014 Opinion and Order at issue in this case, granted Rasier-PA, LLC's (Rasier) application at PUC Docket No. A-2014-2416127[4] for authorization to provide experimental service pursuant to 52 Pa. Code § 29.352[5] for passenger trips between points in Allegheny County (Allegheny Application). Executive argues that the PUC abused its discretion when it denied reconsideration because the PUC lacks jurisdiction to adjudicate Rasier's Allegheny Application since Rasier proposed to

---

[4] Contemporaneously with this Opinion, we address at consolidated Docket Nos. 238 and 240 the PUC's separate December 5, 2014 Opinion and Order granting Rasier statewide authorization to provide experimental service pursuant to 52 Pa. Code § 29.352 at PUC Docket No. A-2014-2424608 (Statewide Application). Also consolidated with those matters is No. 253 C.D. 2015, which is Executive's appeal of the PUC's January 29, 2015 Opinion and Order denying reconsideration of the December 5, 2014 Opinion and Order at PUC Docket No. A-2014-2424608.

[5] The PUC's regulation at 52 Pa. Code § 29.352 governs certification for the provision of experimental service, and provides as follows:

> In order to advance and promote the public necessity, safety and convenience, the Commission may, upon application, grant a new certificate or an amendment to an existing certificate in order to allow to be provided a new, innovative or experimental type or class of common carrier service. An application for a certificate or amendment shall state that it is an application for an experimental service. Holders of experimental certificates shall abide by this chapter except those which the Commission shall explicitly state do not apply. Holders of experimental certificates shall abide by an[y] additional regulations or requirements, including informational and reporting requirements, which the Commission shall stipulate upon granting the certificate. A certificate for experimental service shall be valid only until the service is abandoned, until 2 years have elapsed from the time the certificate was approved or until the Commission enacts amendments to this chapter pertaining to the new class of service represented by the experimental service, whichever event occurs first.

provide transportation service as a carrier without having custody of any vehicles. Finding no error, we affirm.[6]

Rasier filed its Allegheny Application on April 14, 2014. Executive, among other existing taxi cab companies that provide services in the areas proposed to be served by Rasier, filed a protest. Two PUC Administrative Law Judges (ALJs) held combined evidentiary hearings for the Allegheny Application and for Rasier's application for statewide authorization (Statewide Application). The ALJs issued a Recommended Decision on September 25, 2014 dismissing the Allegheny Application on the basis that Rasier failed to comply with PUC Orders requiring production of trip data and, thus, obstructed the hearings. (Recommended Decision at 9, R.R. at 129.)

---

[6] Executive states in its brief that it seeks review of the January 29, 2015 Opinion and Order denying its Petition for Reconsideration of the December 5, 2014 Opinion and Order. (Executive's Br. at 1.) As such, the merits of the December 5, 2014 Opinion and Order are not directly before us. As we note subsequently here, Executive challenged the PUC's jurisdiction to consider Rasier's Application before the ALJs, again before the PUC on *de novo* review, and again in its Petition for Reconsideration. However, the PUC's jurisdiction is not implicated directly by our review of the denial of reconsideration as we look simply to whether the issues raised on reconsideration were considered previously during the review of Rasier's Application. The same posture was presented at No. 253 C.D. 2015. There, we nonetheless addressed Executive's argument that the PUC lacks authority even to consider Rasier's Application as it provides important guidance with regard to the experimental service provisions at 52 Pa. Code § 29.352, and the PUC fully addressed the issue in its brief. We, thus, were able to conduct effective appellate review of this question notwithstanding Executive's limiting its appeal to the denial of reconsideration. Moreover, it is black letter law that issues concerning an agency's jurisdiction are never waived and can be raised sua sponte by the court. Blackwell v. State Ethics Commission, 567 A.2d 630, 636 (Pa. 1989). Our conclusions in No. 253 C.D. 2015 apply with equal force here.

3

As provided by Section 335(a) of the Public Utility Code, 66 Pa. C.S. § 335(a),[7] the PUC exercised *de novo* review of the Recommended Decision, and subsequently issued the December 5, 2014 Opinion and Order substantially reversing the Recommended Decision. The PUC, in the December 5, 2014 Opinion and Order authorized Rasier to provide service in Allegheny County subject to extensive compliance and operating conditions identical to those the PUC imposed in the companion December 5, 2014 Opinion and Order granting Rasier statewide authorization. The PUC would issue a Certificate of Public Convenience (CPC) allowing Rasier to operate as an experimental common carrier in Allegheny County if Rasier filed a Compliance Plan. Rasier filed its Compliance Plan on December 24, 2015, addressing the conditions set forth in Appendix A of the December 5, 2014 Opinion and Order regarding driver integrity, vehicle safety, adequate insurance, and other provisions. By Order entered January 29, 2015, the PUC approved the Compliance Plan (Compliance Order) and authorized Rasier to operate in accordance with the December 5, 2014

---

[7] Section 335(a) provides in pertinent part:

> When the commission does not preside at the reception of evidence, the presiding officer shall initially decide the case, unless the commission requires, either in specific cases or by general rule, the entire record to be certified to it for decision. When the presiding officer makes an initial decision, that decision then shall be approved by the commission and may become the opinion of the commission without further proceeding within the time provided by commission rule. On review of the initial decision, the commission has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule. When the commission makes the decision in a rate determination proceeding without having presided at the reception of the evidence, the presiding officer shall make a recommended decision to the commission in accordance with the provisions of this part.

66 Pa. C.S. § 335(a).

Opinion and Order.  Executive did not appeal the Compliance Order.  Executive filed the Petition for Reconsideration on December 22, 2014, which Rasier timely answered.  In addition to entering the Compliance Order on January 29, 2015, the PUC denied Executive's Petition for Reconsideration on that date.  Executive subsequently filed this petition for review.[8]

As noted above, Executive argues that the PUC abused its discretion when it denied reconsideration.  Executive posits that the PUC lacked jurisdiction to adjudicate Rasier's Allegheny Application in the first instance because Rasier proposed to provide transportation service as a carrier without having custody of any vehicles.

In greater detail, Executive argues that custody of vehicles used to provide service as a "common carrier"[9] is a sine qua non of the Public Utility Code's

---

[8] In an appeal of the December 5, 2014 Opinion and Order, our review would be limited to determining if a constitutional violation or error has occurred; if the decision is in accordance with law; and if substantial evidence supports necessary findings of fact.  PECO Energy Co. v. Pennsylvania Public Utility Commission, 791 A.2d 1155, 1160 (Pa. 2002); 2 Pa. C.S. § 704.  Evidence is substantial when relevant and of a nature that a reasonable mind might accept as adequate to support a conclusion.  Lancaster County v. Pennsylvania Labor Relations Board, 82 A.3d 1098, 1109-10 (Pa. Cmwlth. 2013).  Here, we review a denial of reconsideration for abuse of discretion.  J.A.M. Cab Company, Inc. v. Pennsylvania Public Utility Commission, 572 A.2d 1317, 1318 (Pa. Cmwlth. 1990).  The PUC abuses its discretion if the denial of reconsideration demonstrates bad faith, fraud, capricious action, or abuse of power.  Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission, 535 A.2d 1246, 1248 (Pa. Cmwlth. 1988).

[9] Section 102 of the Public Utility Code sets forth the following relevant definitions for this term:

"Common carrier." Any and all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the

*(Continued…)*

5

public for the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by, through, over, above, or under land, water, or air, and shall include forwarders, **but shall not include** contract carriers by motor vehicles, or **brokers**, or any bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis.

*"Common carrier by motor vehicle."* Any common carrier who or which holds out or undertakes the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation, whether or not the owner or operator of such motor vehicle, or who or which provides or furnishes any motor vehicle, with or without driver, for transportation or for use in transportation of persons or property as aforesaid, and shall include common carriers by rail, water, or air, and express or forwarding public utilities insofar as such common carriers or such public utilities are engaged in such motor vehicle operations, but does not include:

(1) A lessor under a lease given on a bona fide sale of a motor vehicle where the lessor retains or assumes no responsibility for maintenance, supervision, or control of the motor vehicles so sold.

(2) Transportation of school children for school purposes or to and from school-related activities whether as participants or spectators, with their chaperones, or between their homes and Sunday school in any motor vehicle owned by the school district, private school or parochial school, or transportation of school children between their homes and school or to and from school-related activities whether as participants or spectators, with their chaperones, if the person performing the school-related transportation has a contract for the transportation of school children between their homes and school, with the private or parochial school, with the school district or jointure in which the school is located, or with a school district that is a member of a jointure in which the school is located if the jointure has no contracts with other persons for the transportation of students between their homes and school, and if the person maintains a copy of all contracts in the vehicle at all times, or children between their homes and Sunday school in any motor vehicle operated under contract with the school district, private school or parochial school. Each school district shall adopt regulations regarding the number of chaperones to accompany students in connection with school-related activities.

(3) Any owner or operator of a farm transporting agricultural products from, or farm supplies to, such farm, or any independent contractor or cooperative

*(Continued…)*

regulatory scheme for motor carrier services. Executive contends that custody and control is the sole manner in which a CPC holder can ensure compliance with the safety requirements, and points out that "Section 1501 of the Public Utility Code, 66 Pa. C.S. § 1501,[10] requires all public utilities to furnish and provide a certain

---

agricultural association hauling agricultural products or farm supplies exclusively for one or more owners or operators of farms.

(4) Any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated and road construction materials. This paragraph does not include the use or furnishing of five-axle tractor trailers.

(5) Transportation of property by the owner to himself, or to purchasers directly from him, in vehicles owned and operated by the owner of such property and not otherwise used in transportation of property for compensation for others.

(6) Transportation of voting machines to and from polling places by any person or corporation for or on behalf of any political subdivision of this Commonwealth for use in any primary, general, municipal or special election.

(7) Transportation of pulpwood, chemical wood, saw logs or veneer logs from woodlots.

(8) Transportation by towing of wrecked or disabled motor vehicles.

(9) Any person or corporation who or which furnishes transportation for any injured, ill or dead person.

66 Pa. C.S. § 102(emphasis added).

[10] Section 1501 provides:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the

*(Continued…)*

7

quality of service and facilities and imposes affirmative duties upon them to maintain such quality." (Executive's Br. at 10.) According to Executive, absent custody or control, a CPC holder functions merely as a "broker," someone who facilitates transportation services with no responsibility to comply with regulatory standards. Executive notes that the PUC "does not hold brokers responsible for the vehicle standards of the services it brokers because it would be absurd to do so." (Executive's Br. at 11.)

Thus, the PUC's conclusion that it had jurisdiction over Rasier's Allegheny Application and that vehicle ownership is not required for jurisdiction is, under Executive's interpretation, inconsistent with Section 1501 of the Public Utility Code and the PUC's position on brokers. For Executive, the critical factor is custody or control over a vehicle, not ownership. It argues that while a "common carrier by motor [vehicle]" is not required to own or operate a vehicle, such carrier has an "obligation[] under the [Public Utility] Code to assume custody, control and supervision of each vehicle it operates under its [CPC.]" (Executive's Br. at 12.) As such, Executive maintains that the PUC erred in assuming jurisdiction to grant

commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility. The commission shall have sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility.

66 Pa. C.S. § 1501.

the Allegheny Application because Rasier proposes to act as a "broker,"[11] as defined at 66 Pa. C.S. § 2501(b), and not a "common carrier by motor vehicle" within the meaning of the Public Utility Code. On that basis, Executive asserts, the PUC misapplied the law and abused its discretion when it approved Rasier's Allegheny Application.

The PUC argues that it denied Executive's Reconsideration Petition because it failed to meet the standard articulated in Duick v. Pennsylvania Gas and Water Company, 56 Pa. PUC 553, 559 (1982). Duick requires that a reconsideration petition identify "new and novel arguments, not previously heard, or considerations which appear to have been overlooked or not addressed by the Commission," not "'a second motion to review and reconsider, to raise the same questions which were specifically considered and decided against them.'" Id. (quoting Pennsylvania Railroad Co. v. Pennsylvania Public Service Commission, 179 A. 850, 854 (Pa. Super. 1935)). The PUC contends that Executive, in its Reconsideration Petition, sought what Duick and Pennsylvania Railroad Co.

---

[11] Section 2501(b) of the Public Utility Code defines "Broker" as:

> **"Broker."** Any person or corporation not included in the term "motor carrier" and not a bona fide employee or agent of any such carrier, or group of such carriers, who or which, as principal or agent, sells or offers for sale any transportation by a motor carrier, or the furnishing, providing, or procuring of facilities therefor, or negotiates for, or holds out by solicitation, advertisement, or otherwise, as one who sells, provides, furnishes, contracts, or arranges for such transportation, or the furnishing, providing, or procuring of facilities therefor, other than as a motor carrier directly or jointly, or by arrangement with another motor carrier, and who does not assume custody as a carrier.

66 Pa. C.S. § 2501(b).

expressly deny: a second review of questions definitively decided against Executive.

Before we address the parties' respective positions, a brief review of Rasier's proposed services is in order. In the companion case to this one, we also discussed Rasier's Transportation Network Company (TNC) service. Capital City Cab Services, et al. v. Pennsylvania Public Utility Commission, __ A.3d __, __ (Pa. Cmwlth., Nos. 238, 240, 253 C.D. 2015, filed April 19, 2016), slip op. at 11 (Capital City Cab). The PUC, in its brief, describes a TNC as:

> a fee-based motor carrier employing various modes of mobile digital computing to connect passengers with prequalified drivers of passenger vehicles. TNCs utilize electronic and social media forms of communication, including mobile applications and web-based reservation services, to facilitate these connections. The TNC business model generally does not seek to own vehicles or employ drivers.

(The PUC's Br. at 4.) Rasier is a wholly owned subsidiary of Uber Technologies, Inc. (Uber). (Hr'g Tr., August 18, 2014 at 53, 60, S.R.R. at 5b, 12b.)[12] Uber owns the smartphone application, digital platform, and technology (App) Rasier has licensed. Rasier uses the App to offer transportation to the public for compensation using non-certificated drivers operating their personal vehicles. (Hr'g Tr. at 57, 75, 77, 90, 101-02, 262-63, S.R.R. at 9b, 27b, 29b, 42b, 53b-54b, 180b-181b.) Potential customers create a user account with Uber and proffer an acceptable form of electronic payment. (Hr'g Tr. at 55-57, S.R.R. at 7b-9b.) A

---

[12] The hearing transcript is from the hearing on the Application held before the ALJs.

customer who requests a ride is paired by the App with the nearest driver available to accept passengers. The App notifies the rider who then views a map showing the driver's location, the driver's photograph, the vehicle type used by the driver, its license plate number, and an estimated time of arrival. (Hr'g Tr. at 58, S.R.R. at 10b.) Upon arrival, the driver provides a ride as directed. The App charges the customer electronically when the customer exits the driver's vehicle. (Hr'g Tr. at 56, S.R.R. at 8b.)

Turning now to the parties' arguments and the record, we see that Executive raised the same arguments before both the ALJs and the PUC as in its Petition for Reconsideration and its appeal here. Indeed, Executive does not argue that the December 5, 2014 Opinion and Order granting Rasier's Allegheny Application or the January 29, 2015 Opinion and Order denying reconsideration failed to address Executive's claims. Instead, Executive reiterates the arguments made below and does not explain why it is entitled to reconsideration under Duick.

Executive argued before the ALJs that Rasier is not a common carrier because it did not propose to provide transportation service with its own vehicles in the Allegheny Application, and that Rasier really sought authority to act as a "broker" as defined at 66 Pa. C.S. § 2501. (Executive's Br. to the ALJs at 2-3, 11-13, R.R. at 80-81, 89-91). In the alternative, Executive argued before the ALJs that Rasier could not be a "broker" within the meaning of that term because Rasier's Allegheny Application did not propose to use certificated carriers to provide service. (Executive's Brief to the ALJs at 3, 14-15, R.R. at 81, 92-93). These are the same arguments made to this Court.

11

Our review of the December 5, 2014 Opinion and Order shows that the PUC cited to those sections of Executive's brief when the PUC rejected the argument that Rasier was required under the Code to own vehicles in order to be a motor carrier. (December 5, 2014 Opinion and Order at 29-31.) The PUC, in the December 5, 2014 Opinion and Order, concluded that the definitions for transportation public utilities stood for the contrary, i.e., that the PUC has jurisdiction over transportation services offered to the public for compensation independent of vehicle ownership or custody. The PUC in the December 5, 2014 Opinion and Order further concluded that Rasier's service fell within its jurisdiction because Rasier utilized Uber software and back office functions to unquestionably offer and operate an "on demand" motor carrier passenger service to the public for compensation. (December 5, 2014 Opinion and Order at 20.)

In addition, the December 5, 2014 Opinion and Order also addressed Executive's alternative argument regarding "broker" service and uncertificated carriers. The PUC concluded that Rasier will not use certificated motor carriers and, thus, cannot be a "broker" under the Public Utility Code, and also concluded that 52 Pa. Code § 29.352 allows flexibility to authorize on a trial basis new motor carrier service that is not an exact definitional fit in order to determine if such service is beneficial to the public. (December 5, 2014 Opinion and Order at 21.) On that basis, the PUC determined that it was appropriate to consider Rasier's TNC service as a common carrier under the experimental service regulation because Rasier is not a broker and because Rasier proposes to provide transportation service to the public for compensation. (December 5, 2014 Opinion and Order at 20.)

12

In Executive's Petition for Reconsideration, it asserts the same argument regarding Rasier acting, not as a motor carrier, but rather as a broker without using certificated motor carriers.  (Petition for Reconsideration at 5-7, R.R. at 232-34). The PUC in the January 29, 2015 Order denying Reconsideration declined to reconsider whether Rasier was a broker absent any new basis for doing so. (January 29, 2015 Order at 21.)  After further review, we conclude that the PUC did not err or abuse its discretion when it denied Executive's Petition for Reconsideration.  J.A.M. Cab Company, Inc. v. Pennsylvania Public Utility Commission, 572 A.2d 1317, 1318 (Pa. Cmwlth. 1990); Pennsylvania Railroad Co, 179 A. at 854; Duick, 56 Pa. PUC at 559.

As noted above, Executive seeks review only of the PUC's denial of its Petition for Reconsideration.  Thus, we are not called upon to review the merits of the December 5, 2014 Opinion and Order granting Rasier's Allegheny Application. As such, we will not address here whether that decision is in accordance with law or supported by substantial evidence.  However, we note that we performed that analysis in Capital City Cab, wherein we addressed the merits of the December 5, 2014 Opinion and Order granting Rasier's Statewide Application and affirmed the PUC's determination.  Capital City Cab, __ A.3d at __, slip op. at 13-21.  The record in that matter was made in conjunction with the PUC's consideration of the Allegheny Application, and many of the same participants made the same arguments and relied on the same witnesses and evidence.  We would, thus, have concluded that the PUC, likewise, did not err here.

13

For these reasons, the January 29, 2015 Opinion and Order denying Executive's Petition for Reconsideration is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

President Judge Pellegrini concurs in result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Executive Transportation Co., Inc.,    :
                                                   :
                        Petitioner    :
                                                   :
                       v.            :    No. 252 C.D. 2015
                                                   :
Pennsylvania Public Utility         :
Commission,                        :
                                                   :
                  Respondent    :

# **O R D E R**

NOW, this 22nd day of April, 2016, the January 29, 2015 Opinion and Order of the Pennsylvania Public Utility Commission denying Executive Transportation Co., Inc.'s Petition for Reconsideration is affirmed.

 

_____
**RENÉE COHN JUBELIRER, Judge**