IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judith D. Hendin,                                    :
                                Petitioner           :
                                                     :
            v.                                       : No. 766 C.D. 2024
                                                     : Submitted: October 9, 2025
Public Utility Commission,                           :
                                Respondent           :


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  January 22, 2026


        Judith D. Hendin (Hendin), *pro se*, petitions this Court for review of the Public Utility Commission's (Commission) January 26, 2024 order, which denied Hendin's exceptions, adopted the initial decision of the administrative law judge (ALJ), and dismissed Hendin's formal complaint seeking to prevent the installation of a "smart meter"[1] at her home.  Further, Hendin petitions for review of the Commission's April 18, 2024 order, which denied her petition for reconsideration of the January 26, 2024 order.  After careful review, we affirm.

---

[1] A smart meter "record[s] electricity consumption on at least an hourly basis using radio frequency (RF) electromagnetic energy." *Hughes v. Pa. Pub. Util. Comm'n*, 322 A.3d 982, 987 (Pa. Cmwlth. 2024), *reconsideration denied* (Oct. 1, 2024), *appeal denied*, 340 A.3d 267 (Pa. 2025).

## BACKGROUND

These proceedings began on June 29, 2018, when Hendin filed a *pro se* formal complaint with the Commission, alleging Metropolitan Edison Company (Met-Ed)[2] intended to install a smart meter at her home. Certified Record (C.R.) at 2a. Hendin alleged a different company previously installed a smart meter at her home, and she became ill. *Id.* Hendin alleged her doctor "sent a letter to the company," after which the company removed the smart meter, and her health improved. *Id.* Thus, Hendin contended she did not want Met-Ed to install the smart meter. *Id.* On July 31, 2018, Met-Ed simultaneously filed a preliminary objection and an answer with new matter. *Id.* at 8a. An ALJ overruled the preliminary objection on October 18, 2018.[3]

The case proceeded to a hearing on December 19, 2019, December 20, 2019, and January 24, 2020, at which Hendin was represented by counsel. The ALJ issued an initial decision on August 7, 2020, denying and dismissing the formal complaint. In relevant part, the ALJ concluded that Section 2807(f)(2) of the Public Utility Code (Code)[4] requires smart meter installation without the ability for customers to opt out, and that Hendin did not meet her burden of proof that installation of the smart meter

---

[2] Met-Ed states that "[o]n January 1, 2024, FirstEnergy Corp.'s Pennsylvania operating companies (i.e., [Met-Ed], Pennsylvania Electric Company, Pennsylvania Power Company, and West Penn Power Company) merged into FirstEnergy Pennsylvania Electric Company." Met-Ed's Br. at 1 n.1. For the sake of consistency, we refer to the utility at issue in this matter as Met-Ed throughout our decision.

[3] Afterward, on October 29, 2018, Hendin filed *pro se* responses to the preliminary objection and new matter.

[4] 66 Pa.C.S. § 2807(f)(2). Our General Assembly added subsection (f)(2) via Section 3 of the Act of October 15, 2008, P.L. 1592, No. 129, commonly known as Act 129.

constituted unsafe or unreasonable service in violation of Section 1501 of Code.[5]  *Id.* at 1295a-1308a.

Hendin filed *pro se* exceptions on August 27, 2020, and Met-Ed filed a reply on September 8, 2020.  By order entered November 4, 2020, the Commission stayed active formal complaint proceedings "challenging an electric distribution company's deployment of smart meter technology" under Section 1501 of the Code, where "an ALJ has issued an initial decision addressing the merits of the formal complaint and the initial decision has not become final by operation of law . . . until the Commission takes further action to lift the stay."  *Id.* at 5223a.  The Commission entered the stay citing the impact of, and uncertainty surrounding, this Court's decision in *Povacz v. Pennsylvania Public Utility Commission*, 241 A.3d 481 (Pa. Cmwlth. 2020) (*Povacz I*).

On August 16, 2022, the Pennsylvania Supreme Court reversed this Court in part and affirmed in part in *Povacz v. Pennsylvania Public Utility Commission*, 280 A.3d 975 (Pa. 2022) (*Povacz II*).  Therefore, the Commission lifted the stay by order entered November 14, 2023.  The Commission denied Hendin's exceptions, adopted the initial decision, and dismissed her complaint by order entered January 26, 2024.  Among other things, the Commission applied *Povacz II*, explaining that the Code requires smart meter installation without the ability for customers to opt out, and that Hendin did not meet her burden of proving installation of the smart meter constituted unsafe or unreasonable service.  C.R. at 5323a-27a, 5335a-37a, 5342a-45a.

While Hendin's exceptions were still pending, on January 21, 2024, she filed a *pro se* petition to reopen the proceedings for the purpose of submitting additional

---

[5] 66 Pa.C.S. § 1501.

3

evidence.[6]  In addition, Hendin filed a *pro se* petition for reconsideration on February 12, 2024.  The Commission expressly granted reconsideration for purposes of tolling the appeal period by order entered February 22, 2024.  Met-Ed then filed an answer to Hendin's petition for reconsideration on February 22, 2024, to which Hendin filed a reply on April 18, 2024.  The Commission denied both of Hendin's petitions by order entered April 18, 2024.  Hendin timely filed a petition for review in this Court from the Commission's January 26, 2024, and April 18, 2024 orders.

## DISCUSSION

We review the Commission's January 26, 2024 order, which denied Hendin's exceptions and dismissed her formal complaint, for violations of constitutional rights and other errors of law.  *Johnson v. Pa. Pub. Util. Comm'n*, 338 A.3d 203, 207 n.3 (Pa. Cmwlth. 2025), *reargument denied* (June 16, 2025), *appeal granted* (Pa., No. 191 WAL 2025, filed Dec. 31, 2025).  Additionally, we review whether substantial evidence supports the Commission's necessary findings of fact.  *Id.*  Regarding the Commission's April 18, 2024 order, denying Hendin's petition for reconsideration, we review for an abuse of discretion.  *Exec. Transp. Co., Inc. v. Pa. Pub. Util. Comm'n*, 138 A.3d 145, 148 n.8 (Pa. Cmwlth. 2016) (en banc).  The Commission "abuses its discretion if the denial of reconsideration demonstrates bad faith, fraud, capricious action, or abuse of power."  *Id.*

Two statutory provisions are critical to our disposition of this matter.  The first is Section 2807(f)(2) of the Code, which provides:

**(f) Smart meter technology and time of use rates.--**

. . . .

---

[6] Hendin filed an addendum to her petition to reopen on January 31, 2024.

4

(2) Electric distribution companies shall furnish smart meter technology as follows:

(i) Upon request from a customer that agrees to pay the cost of the smart meter at the time of the request.

(ii) In new building construction.

(iii) In accordance with a depreciation schedule not to exceed 15 years.

66 Pa.C.S. § 2807(f)(2).

The Commission concluded Hendin did not establish a violation of the second statutory provision, which is Section 1501:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility. The commission shall have sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility.

66 Pa.C.S. § 1501.

Our Supreme Court considered these provisions in *Povacz II*, concluding "Act 129 does mandate that [electric distribution companies] furnish smart meters to all electric customers within an electric distribution service area and does not provide

5

electric customers the ability to opt out of having a smart meter installed." 280 A.3d at 983. Further, the Court explained a customer may obtain an accommodation by establishing "by a preponderance of the evidence that installation of a smart meter violates Section 1501." *Id.* at 983-84. The Court elaborated on the burden of proof as follows:

> The preponderance burden requires a customer to prove that a service or facility is — more likely than not — the cause of the problem described in their complaint. Specific to smart meters and RF emissions, the burden is two-fold. First, a customer must present expert opinion rendered to a reasonable degree of scientific certainty that smart meters emit RFs and that RF emissions cause adverse health effects and, second, expert opinion rendered to a reasonable degree of medical certainty that RF emissions from the smart meters, either alone or cumulative to other sources of RF emissions, caused them harm. Once the customer produces such evidence, the utility may then defend by providing scientific and/or medical expert testimony that, within a reasonable degree of certainty, the RF emissions from smart meters did not cause the alleged harm. The fact finder must then weigh the evidence and decide whether it is more likely than not that the smart meter causes harm to the customer.

*Id.* at 1006 (citations omitted).

Our Supreme Court endorsed the Commission's use of a "conclusive causal connection" standard when assessing these claims:

> "Conclusive causal connection" means that the proffered evidence must support the conclusion that a causal connection existed between a service or facility and the alleged harm. It is not possible for evidence that is inconclusive to be sufficient to meet the preponderance of the evidence standard. Inconclusive means that the evidence does not lead to a conclusion of a definite result one way or the other. While the preponderance of the evidence standard is not stringent, it does require that the plaintiff's evidence ever so slightly (like, with the weight of a feather) supports the plaintiff's contention. Evidence that does not support a conclusion (or is inconclusive) cannot meet that minimal burden. Thus, where scientific evidence is required to establish the

6

safety of a service or facility, use of the evidentiary standard of "conclusive causal connection" to assess the evidence is correct.

*Id.* at 1006-07 (citation omitted).

In her brief on appeal, Hendin purports to raise 11 issues for our review, many of which contain numerous subissues. For the sake of concision, we observe several of Hendin's issues involve the legal analysis and burden of proof that should apply when a customer challenges installation of a smart meter, including argument that Act 129 does not require smart meter installation. Hendin's Br. at 16-21, 40-41, 44-51, 60-81. Our Supreme Court's *Povacz II* decision is binding on this Court, and we are not free to disregard it in Hendin's favor.[7]

In a related argument, Hendin contends Met-Ed should have provided her with a reasonable accommodation. *See* Hendin's Br. at 41-44. Hendin contends Met-Ed offered her an accommodation, but the accommodation "was unreasonable because it did not take into account the particular terrain of the property."[8] *Id. at* 43. Hendin points to our Supreme Court's explanation in *Povacz II* that "[t]his holding does not preclude an electric utility from providing a reasonable accommodation to an electric customer in the absence of a Section 1501 violation pursuant to a customer service

---

[7] Met-Ed argues *Povacz II* renders Hendin's appeal moot. Met-Ed's Br. at 23-27. Hendin responds in her reply brief. Hendin's Reply Br. at 2-10. We are satisfied this appeal is not moot, although we conclude the appeal fails on the merits for the reasons discussed throughout our decision.

[8] Hendin explained during the hearing:

> We were discussing the possibility of relocating [the smart meter] . . . , and I was very open to the option. But it turned out that the cost would have been prohibitive because I live on a hill that was made out of a rock called Eastonite which is as hard as granite; and, to move it to a depth of two feet under on a very sloped hill, it would have been extremely expensive to try to do that.

C.R. at 242a.

policy." 280 A.3d at 983 n.5. Although Met-Ed may provide an accommodation to Hendin, she is not entitled to one. As our Supreme Court further explained in *Povacz II*, "by operation of the statute, an [electric distribution company] cannot be required to provide accommodation without the finding of a Section 1501 violation." *Id.* at 1014. Moreover, an accommodation is available "to the extent allowed by Act 129 and a utility's tariff." *Id.*

Hendin also contends smart meter installation would violate her constitutional rights, specifically her right to bodily integrity. Hendin's Br. at 81-87. In *Povacz I,* this Court "decline[d] to recognize a viable claim by [the c]onsumers regarding a violation of their Fourteenth Amendment liberty interests in bodily integrity." 241 A.3d at 488. Our Supreme Court did not grant allocatur on that issue. *See Povacz II*, 280 A.3d at 985 n.8. Thus, the holding in *Povacz I* declining to recognize a bodily integrity claim remains good law and defeats Hendin's argument on appeal.[9]

Additionally, Hendin challenges the weight and credibility determinations of the Commission regarding the evidence at the hearing before the ALJ. Hendin's Br. at 21-31. This Court has explained:

> The [Commission] is the ultimate finder of fact in formal complaint proceedings. As factfinder, the [Commission] is empowered to review record evidence, make credibility determinations, and accord evidentiary weight. When reviewing a decision of the [Commission], an appellate court should neither substitute its judgment for that of the [Commission] when substantial evidence supports the [Commission's] decision on a matter within the [Commission's] expertise, nor should

---

[9] Further, Hendin presents argument based on article I, section 27 of the Pennsylvania Constitution, Pa. Const. art. I, § 27, commonly known as the Environmental Rights Amendment. Hendin's Br. at 87-88. The Commission concluded Hendin waived this argument by not raising it at the hearing before the ALJ. C.R. at 5584a. Hendin does not address the Commission's waiver determination, nor does she develop her argument regarding the Environmental Rights Amendment in a manner capable of meaningful appellate review. *See Angels of Care by TLM, LLC v. Dep't of Hum. Servs.*, 323 A.3d 250, 256 (Pa. Cmwlth. 2024).

it indulge in the process of weighing evidence and resolving conflicting testimony. Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached. The [Commission's] findings are conclusive where they are supported by substantial evidence.

*Hughes*, 322 A.3d at 993-94 (citations and quotation marks omitted).

During the hearing, Hendin testified on her own behalf and offered testimony from her personal physician, William Kracht, D.O. (Dr. Kracht). Hendin is a somatic therapist, and she did not offer expert testimony. *See* C.R. at 236a, 253a-56a, 264a. Conversely, Dr. Kracht opined Hendin "has symptoms that are provoked by certain electrical exposures and that they improve or resolve once she removes herself from them." *Id.* at 6012a. The written portion of Dr. Kracht's testimony indicates he was rendering his opinions to a reasonable degree of medical and scientific certainty. *Id.* at 5653a.

However, Dr. Kracht testified he became aware of Hendin's electromagnetic sensitivity only because she called his office and asserted she was having symptoms resulting from the smart meter previously installed at her home. C.R. at 5649a. Dr. Kracht did not examine Hendin to confirm her claim of electromagnetic sensitivity, explaining he had already performed a medical examination earlier in the year, and he acknowledged there is no testing available to him as a clinician that could confirm this diagnosis. *Id.* at 5649a-50a, 5996a, 6004a-05a. Given that Dr. Kracht's opinion regarding Hendin's electromagnetic sensitivity was based on her subjective claim of suffering from that condition and Dr. Kracht's inability to find any other explanation for her reported symptoms, *see id.* at 6012a, 86c-90c, we conclude this opinion was speculative and insufficient to establish RF emissions from smart meters are capable

9

of causing, and have caused, harm to Hendin under the conclusive causal connection standard in *Povacz II*.[10, 11]

In her remaining issues, Hendin argues the ALJ improperly excluded evidence and violated her due process rights by curtailing her counsel's cross-examination of Dr. Israel. Hendin's Br. at 51-53. Hendin also criticizes the ALJ, the Commission, and Met-Ed. *Id.* at 31-40, 54-60. Among other things, Hendin accuses the ALJ of partiality, likens the Commission to a "depraved-heart murder[er]" who disregards the value of human life, and alleges the Commission denied her request to opt out of a smart meter or receive an accommodation to protect Met-Ed's financial interests. *Id.* at 34, 55, 57-58.

Ultimately, we reiterate Hendin did not meet her burden of presenting expert opinion to a reasonable degree of certainty establishing that RF emissions from smart meters are capable of causing, and have caused, her harm under the conclusive causal

---

[10] Although Hendin has produced many pages of exhibits in support of her position, it is important to contrast the opinion of an expert witness from the presentation of an exhibit, such as an article describing a scientific study. *Povacz II* requires "expert opinion within a reasonable degree of certainty," 280 A.3d at 1007, rather than mere articles, which are not subject to voir dire or cross-examination.

[11] Even if Hendin's evidence could be construed as expert opinion in support of her claims, the Commission was free to weigh Met-Ed's evidence more favorably. *See Hughes*, 322 A.3d at 993-94. Met-Ed presented testimony from Christopher Davis, Ph.D., a researcher and professor from the University of Maryland, who opined, to a reasonable degree of scientific certainty, that there was "no reliable scientific basis in physics, biophysics, bioelectromagnetics, or radio frequency bioelectromagnetics to conclude that the very low levels of radio frequency fields from Met-Ed's [smart] meters can or will cause any adverse thermal or non-thermal biological effects in people." C.R. at 584a-85a.

In addition, Met-Ed presented testimony from Mark Israel, M.D. (Dr. Israel), a medical doctor, researcher, and Executive Director of the Israel Cancer Research Fund, who opined, to a reasonable degree of medical certainty, that there was "no reliable medical basis to conclude that radio frequency fields from Met-Ed's[]smart meters at [Hendin's] house will cause, contribute to, or exacerbate, any medical condition of . . . Hendin." C.R. at 5301a.

10

connection standard in *Povacz II*. It follows that the ALJ's decision to limit Hendin's cross-examination of Dr. Israel could not have changed the result of this proceeding. Similarly, Hendin does not identify expert witness testimony the ALJ excluded that would have enabled her to meet her burden. *See Mitchell v. Milburn*, 199 A.3d 995, 1002 (Pa. Cmwlth. 2018) (explaining, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party"). Our review does not support Hendin's claims of personal animus by the ALJ, the Commission, and Met-Ed in this case. However, even if true, these claims would not change the fact that Hendin failed to present the expert opinion in support of her allegations that *Povacz II* requires.

## CONCLUSION

For the foregoing reasons, we affirm the January 26, 2024 order, which denied Hendin's exceptions, adopted the initial decision of the ALJ, and dismissed Hendin's formal complaint seeking to prevent the installation of a smart meter. We also affirm the April 18, 2024 order, denying Hendin's petition for reconsideration.

_____
STACY WALLACE, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judith D. Hendin,      :
           Petitioner    :
                 :
      v.               : No. 766 C.D. 2024
                 :
Public Utility Commission,    :
           Respondent    :

# **O R D E R**

**AND NOW**, this 22nd day of January 2026, the Public Utility Commission's January 26, 2024 and April 18, 2024 orders are **AFFIRMED**.

_____
STACY WALLACE, Judge