IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Quigley and                :
Teresa Mendez-Quigley,        :
             Petitioners   :
                           :
       v.                  : No. 1180 C.D. 2024
                           : Submitted: February 3, 2026
Pennsylvania Public Utility    :
Commission,                 :
             Respondent  :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                   FILED: May 15, 2026

James Quigley (Mr. Quigley) and Teresa Mendez-Quigley (Mrs. Mendez-Quigley) (collectively, the Quigleys), who represented themselves in the proceedings below and continue to represent themselves on appeal, petition this Court for review of the Pennsylvania Public Utility Commission's (Commission) April 25, 2024 order, which denied their exceptions, adopted the initial decision of the administrative law judge (ALJ), and dismissed their formal complaint seeking to prohibit the installation of an advanced metering infrastructure meter (AMI), or

"smart meter,"[1] at their residence. Additionally, the Quigleys petition for review of the Commission's July 11, 2024 order, which denied their May 9, 2024 petition for relief. After careful review, we quash as untimely the Quigleys' petition for review to the extent it challenges the April 25, 2024 order, and we affirm the July 11, 2024 order.

## BACKGROUND

On August 1, 2017, the Quigleys filed a formal complaint with the Commission, objecting to the installation of a smart meter at their home by PECO Energy Company (PECO). Certified Record (C.R.) at 1a. Therein, they indicated, "despite a note from a medical doctor stating that [Mrs. Mendez-Quigley] should not be exposed to wireless transmissions, PECO and [the Commission] are still attempting to force a smart meter on us." *Id.* In turn, the Quigleys requested the Commission exempt their residence from smart meter installation due to health concerns, require PECO to install an analog meter, and require PECO to refrain from threatening to shut off service. *Id.* On August 11, 2017, PECO filed an answer, requesting dismissal of the complaint. *Id.* at 20a-22a. On August 20, 2017, the Quigleys filed a response to PECO's answer, requesting a hearing. *Id.* at 25a.

The ALJ held a hearing on April 17-18, 2018, as originally scheduled. *Id.* at 27a-29a, 69a-242a, 449a-686a. The Quigleys testified on their own behalf and presented no expert witnesses. PECO presented testimony from the following witnesses: PECO Senior Supervisor Bryan Uber, Professional Engineer Glenn Pritchard, Christopher Davis, Ph.D. (Dr. Davis), and Mark Israel, M.D. (Dr. Israel).

---

[1] A smart meter "record[s] electricity consumption on at least an hourly basis using radio frequency (RF) electromagnetic energy." *Hughes v. Pa. Pub. Util. Comm'n*, 322 A.3d 982, 987 (Pa. Cmwlth. 2024), *reconsideration denied* (Oct. 1, 2024), *appeal denied*, 340 A.3d 267 (Pa. 2025) (citations omitted).

On December 31, 2018, the ALJ issued an initial decision denying and dismissing the formal complaint. *Id.* at 701a-33a. Relevant here, the ALJ held Section 2807(f)(2) of the Public Utility Code (Code)[2] requires smart meter installation without the ability for customers to opt out, and the Quigleys did not meet their burden of proving installation of the smart meter constituted unsafe or unreasonable service in violation of Section 1501 of the Code.[3]

On January 19, 2019, the Quigleys filed exceptions, *id.* at 737a, and on January 30, 2019, PECO filed a reply, *id.* at 759a. By order entered November 4, 2020, the Commission stayed active formal complaint proceedings, including the Quigleys', "challenging an electric distribution company's deployment of smart meter technology" under Section 1501 of the Code, where "an ALJ has issued an initial decision addressing the merits of the formal complaint and the initial decision has not become final by operation of law . . . until the Commission takes further action to lift the stay." *Id.* at 782a. The Commission entered the stay citing the impact of, and uncertainty surrounding, this Court's decision in *Povacz v. Pennsylvania Public Utility Commission*, 241 A.3d 481 (Pa. Cmwlth. 2020) (*Povacz I*).

On August 16, 2022, the Pennsylvania Supreme Court reversed this Court in part and affirmed in part in *Povacz v. Pennsylvania Public Utility Commission*, 280 A.3d 975 (Pa. 2022) (*Povacz II*). Accordingly, the Commission lifted the stay by order entered November 14, 2023. *Id.* at 798a. Subsequently, by order entered April 25, 2024, the Commission denied the Quigleys' exceptions, adopted the initial

---

[2] 66 Pa.C.S. § 2807(f)(2). Our General Assembly added subsection (f)(2) by way of Section 3 of the Act of October 15, 2008, P.L. 1592, No. 129, commonly known as Act 129.

[3] 66 Pa.C.S. § 1501.

decision, and dismissed their complaint. Among other things, the Commission applied *Povacz II*, explaining the Code requires smart meter installation without the ability for customers to opt out, and the Quigleys did not satisfy their burden of proving installation of the smart meter constituted unsafe or unreasonable service. C.R. at 1431a-35a, 1438a-40a, 1443a-58a.

On May 9, 2024, the Quigleys filed an initial petition for relief, generally requesting relief from the Commission's April 25, 2024 order, including additional time to file an appropriate petition for relief, a supersedeas from the Commission on any action by PECO, an accommodation from PECO, and permission to file a petition for relief based on PECO's action on the request for accommodation. *Id.* at 1469a. On July 11, 2024, the Commission entered an order denying the petition for relief.[4] On August 8, 2024, the Quigleys filed a petition for review in this Court from the Commission's April 25, 2024 and July 11, 2024 orders.[5] PECO intervened on October 2, 2024.

---

[4] Additionally, the Commission specifically held "[t]o the extent the [p]etition may be construed as a [p]etition for [r]econsideration, the [p]etition is denied on the grounds that we find that the [Quigleys] assert no reason which persuades us to exercise our discretion to grant reconsideration." C.R. at 1489a, n.2 (citation omitted).

[5] Under Pennsylvania Rule of Appellate Procedure 1512(a)(1), Pa.R.A.P. 1512(a)(1), a petition for review must be filed within 30 days after entry of the order of an administrative agency. Filing a petition for reconsideration does not by itself toll the time for filing a petition for review. *Columbia Gas of Pa., Inc. v. Pa. Pub. Util. Comm'n*, 535 A.2d 1246, 1248 (Pa. Cmwlth. 1988). Rather, "[a] timely order expressly granting reconsideration tolls the appeal period of the order under reconsideration. The time for appeal begins to run again once the court or government agency enters a new order following its reconsideration of the merits of the original order." *Barron v. City of Phila.*, 754 A.2d 738, 740-41 (Pa. Cmwlth. 2000) (citations omitted). Because the Quigleys did not file their petition for review within 30 days of the April 25, 2024 order, and the Commission did not expressly grant reconsideration, we quash the Quigley's petition for review to the extent it challenges the April 25, 2024 order.

## DISCUSSION

Generally, we review the Commission's orders for violations of constitutional rights and other errors of law. *Johnson v. Pa. Pub. Util. Comm'n*, 338 A.3d 203, 207 n.3 (Pa. Cmwlth. 2025), *reargument denied* (June 16, 2025), *appeal granted* (Pa., No. 191 WAL 2025, filed Dec. 31, 2025). We also review whether substantial evidence supports the Commission's necessary findings of fact. *Id.* Insofar as the Commission's order denied a request by the Quigleys for reconsideration, we review for an abuse of discretion. *Exec. Transp. Co., Inc. v. Pa. Pub. Util. Comm'n*, 138 A.3d 145, 148 n.8 (Pa. Cmwlth. 2016) (en banc). The Commission "abuses its discretion if the denial of reconsideration demonstrates bad faith, fraud, capricious action, or abuse of power." *Id.*

Disposition of this matter focuses on two critical statutory provisions. The first, Act 129, provides in pertinent part:

**(f) Smart meter technology and time of use rates.--**

> . . . .

> (2) Electric distribution companies shall furnish smart meter technology as follows:

>> (i) Upon request from a customer that agrees to pay the cost of the smart meter at the time of the request.

>> (ii) In new building construction.

>> (iii) In accordance with a depreciation schedule not to exceed 15 years.

66 Pa.C.S. § 2807(f)(2).

The Commission concluded the Quigleys did not establish a violation of the second statutory provision, Section 1501, which provides:

5

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility. The commission shall have sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility.

66 Pa.C.S. § 1501.

Our Supreme Court considered these provisions in *Povacz II*, concluding "Act 129 does mandate that [electric distribution companies] furnish smart meters to all electric customers within an electric distribution service area and **does not provide electric customers the ability to opt out of having a smart meter installed**." 280 A.3d at 983 (emphasis added). Further, the Court explained a customer may obtain an accommodation by establishing "by a preponderance of the evidence that installation of a smart meter violates Section 1501." *Id.* at 983-84. The Court elaborated on the burden of proof as follows:

The preponderance burden requires a customer to prove that a service or facility is — more likely than not — the cause of the problem described in their complaint. Specific to smart meters and RF emissions, the burden is two-fold. First, **a customer must present expert opinion rendered to a reasonable degree of scientific certainty that smart meters emit RFs and that RF emissions cause adverse health effects and, second, expert opinion rendered to a**

6

**reasonable degree of medical certainty that RF emissions from the smart meters, either alone or cumulative to other sources of RF emissions, caused them harm.** Once the customer produces such evidence, the utility may then defend by providing scientific and/or medical expert testimony that, within a reasonable degree of certainty, the RF emissions from smart meters did not cause the alleged harm. The fact finder must then weigh the evidence and decide whether it is more likely than not that the smart meter causes harm to the customer.

*Id.* at 1006 (citations omitted and emphasis added).

Our Supreme Court endorsed the Commission's use of a "conclusive causal connection" standard when assessing these claims:

"Conclusive causal connection" means that the proffered evidence must support the conclusion that a causal connection existed between a service or facility and the alleged harm. It is not possible for evidence that is inconclusive to be sufficient to meet the preponderance of the evidence standard. Inconclusive means that the evidence does not lead to a conclusion of a definite result one way or the other. While the preponderance of the evidence standard is not stringent, it does require that the plaintiff's evidence ever so slightly (like, with the weight of a feather) supports the plaintiff's contention. Evidence that does not support a conclusion (or is inconclusive) cannot meet that minimal burden. Thus, where scientific evidence is required to establish the safety of a service or facility, use of the evidentiary standard of "conclusive causal connection" to assess the evidence is correct.

*Id.* at 1006-07 (citation omitted).

In their brief on appeal, the Quigleys purport to raise 14 issues for our review, primarily related to the April 25, 2024 order, and many of which contain numerous sub-issues. Nonetheless, assuming for the sake of argument the Quigleys preserved these arguments for our review, they would be meritless. Moreover, for the sake of concision, we observe that our Supreme Court's *Povacz II* decision squarely addressed several of the Quigleys' issues, such as the applicable legal analysis and burden of proof governing customer challenges to installation of a smart meter, and

7

argument that Act 129 does not require smart meter installation. Quigleys' Br. at 5-7, 10-30. This Court must abide by our Supreme Court's *Povacz II* decision, which precludes a customer from opting out of smart meter installation. We cannot disregard binding precedent in the Quigleys' favor.

In a related argument, the Quigleys seek a reasonable accommodation from PECO. *See* Quigleys' Br. at 32. They suggest that PECO's proffered accommodation of moving the meter at the Quigleys' expense "is not reasonable when it is unaffordable." *Id.* The Quigleys rely upon our Supreme Court's explanation in *Povacz II* that "[t]his holding does not preclude an electric utility from providing a reasonable accommodation to an electric customer in the absence of a Section 1501 violation pursuant to a customer service policy." 280 A.3d at 983 n.5. Although PECO may provide an accommodation to the Quigleys, they are not entitled to one. As our Supreme Court further explained in *Povacz II*, "by operation of the statute, an [electric distribution company] cannot be required to provide accommodation without the finding of a Section 1501 violation." *Id.* at 1014. Moreover, an accommodation is available "to the extent allowed by Act 129 and a utility's tariff." *Id.*

The Quigleys also generally contend smart meter installation would violate their constitutional rights. Quigleys' Br. at 13-14. However, the Quigleys offer no authority in support of their position. To the extent the Quigleys assert a violation of their constitutional right to bodily integrity, this Court already addressed this issue in *Povacz I,* wherein we "decline[d] to recognize a viable claim by [the c]onsumers regarding a violation of their Fourteenth Amendment liberty interests in bodily integrity." 241 A.3d at 488. Our Supreme Court did not grant allocatur on that issue. *See Povacz II*, 280 A.3d at 985 n.8. Thus, the holding in *Povacz I* declining to

8

recognize a bodily integrity claim remains good law and defeats any purported argument by the Quigleys on appeal.

Additionally, the Quigleys challenge the weight and credibility determinations of the Commission regarding the evidence at the hearing before the ALJ. Quigleys' Br. at 15-27. This Court has explained:

> The [Commission] is the ultimate finder of fact in formal complaint proceedings. As factfinder, the [Commission] is empowered to review record evidence, make credibility determinations, and accord evidentiary weight. When reviewing a decision of the [Commission], an appellate court should neither substitute its judgment for that of the [Commission] when substantial evidence supports the [Commission's] decision on a matter within the [Commission's] expertise, nor should it indulge in the process of weighing evidence and resolving conflicting testimony. Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached. The [Commission's] findings are conclusive where they are supported by substantial evidence.

*Hughes*, 322 A.3d at 993-94 (citations and quotation marks omitted).

During the hearing, the Quigleys testified on their own behalf. Mrs. Mendez-Quigley testified as to having osteoporosis, Vitamin D deficiency, and Sjögren's syndrome, a type of autoimmune disease; the symptoms she experiences; and her beliefs as to how RFs can compromise her health. C.R. at 492a, 495a-98a, 503a-06a. Mr. Quigley testified regarding various research articles concerning the health risks associated with smart meters, relying heavily upon an article by Trevor Marshall of the Autoimmunity Research Foundation. *Id.* at 521a-34a, 546a-52a, 578a-79a, Quigley Ex. B-2. The Quigleys attempted to offer into evidence a letter from Mrs. Mendez-Quigley's treating physician; however, the ALJ sustained

9

PECO's hearsay objection.[6]  *Id.* at 475a-82a.  The Quigleys did not offer any expert testimony.

Unpersuaded by the Quigleys' lay opinions,[7] the Commission found their evidence insufficient to prove PECO's use of a smart meter will constitute unsafe or unreasonable service in violation of Section 1501.  Accordingly, we conclude the Commission did not err in applying the conclusive causal connection standard in *Povacz II.*[8]

In their remaining issues, the Quigleys contend the Commission's proceedings "place *pro se* litigants at an unfair disadvantage," depriving them of due process.  Quigleys' Br. at 31.  The Quigleys criticize the Commission's use of the

---

[6] The letter stated in its entirety, "To Whom It May Concern: It is my medical recommendation that this patient reduce involuntary electromagnetic exposure including wireless transmission." Quigley Ex. A-2.

[7] Although the Quigleys produced several scientific articles as exhibits in support of their position, *Povacz II* specifically requires "expert opinion within a reasonable degree of certainty," 280 A.3d at 1007, rather than mere articles, which are not subject to voir dire or cross-examination.

[8] Even if the Quigleys' had presented expert opinion to support their claims, the Commission was free to weigh PECO's evidence more favorably.  *See Hughes*, 322 A.3d at 993-94.  PECO presented testimony from Dr. Davis, a researcher and professor from the University of Maryland, C.R. at 862a, who opined to a reasonable degree of scientific certainty, that "the levels of [RF] fields from PECO's AMI electric meters comply with the Federal Communication Commission's safety limits . . . [a]nd . . . very important[ly], there is no reliable scientific basis to conclude that the low level RF fields from the PECO AMI meters are capable of causing any adverse biological effects." *Id.* at 117a.

Additionally, PECO offered testimony from Dr. Israel, a medical doctor, professor and medical researcher at Dartmouth Medical School, and Executive Director of the Israel Cancer Research Fund, C.R. at 886a, who opined, to a reasonable degree of medical certainty, that "there's no reliable medical basis to conclude that radiofrequency fields from PECO's AMI [] meters cause, or contribute to, or exacerbate Sj[ö]gren's syndrome." *Id.* at 174a.  Dr. Israel opined similarly as to Vitamin D deficiency and osteoporosis. *Id.* at 174a-75a.

10

term "initial hearing," to describe the only proceeding where they could present evidence and witnesses. *Id.* at 31-32. Additionally, they allege difficulty obtaining the transcript after the hearing,[9] and contend the Commission made biased post-hearing rulings in PECO's favor. *Id.* at 31, 33.

Our review of the record confirms the Quigleys had adequate notice of the deadlines for evidence and expert testimony, because the ALJ issued the comprehensive prehearing order nearly seven months before the hearing.[10] C.R. at 27a-34a. Under the law of this Commonwealth, self-represented litigants must comply with the same procedural rules as those trained in the law. *Commonwealth v. Williams*, 896 A.2d 523, 538 (Pa. 2006). "Although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed . . . ." *Kozicki v. Unemployment Comp. Bd. of Rev.*, 299 A.3d 1055, 1063 (Pa. Cmwlth. 2023). Ultimately, we reiterate the Quigleys did not meet their burden of presenting expert opinion to a reasonable degree of certainty establishing that RF emissions from smart meters can cause, and have caused, them harm under the conclusive causal connection standard in *Povacz II*. Our review of the record does not support the Quigleys' claims as to post-hearing bias by the Commission. However, even if true,

---

[9] However, the Quigleys concede they received the transcript at no charge, after this Court directed the Commission "provide the Reproduced Record which included . . . the transcript." Quigleys' Br. at 31.

[10] Among other things, the order included the following language, "**THE COMPLAINT WILL BE DISMISSED IF THE CUSTOMER FAILS TO PARTICIPATE IN THE HEARING AND PRESENT EVIDENCE IN SUPPORT OF THE COMPLAINT.**" C.R. at 27a-34a. (capitalization and emphasis in original).

these claims would not change the fact that the Quigleys did not present the expert opinion in support of their allegations that *Povacz II* requires.

## CONCLUSION

For the foregoing reasons, we quash as untimely the Quigleys' petition for review to the extent it challenges the April 25, 2024 order, which denied the Quigleys' exceptions, adopted the initial decision of the ALJ, and dismissed the Quigleys' formal complaint seeking to prevent the installation of a smart meter. We also affirm the July 11, 2024 order, which denied the Quigleys' petition for relief.

_____
STACY WALLACE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Quigley and                          :
Teresa Mendez-Quigley,                     :
                   Petitioners       :
                                     :
      v.                                   : No. 1180 C.D. 2024
                                       :
Pennsylvania Public Utility                :
Commission,                                :
                   Respondent  :

## **O R D E R**

      **AND NOW**, this 15th day of May 2026, the petition for review of James Quigley and Teresa Mendez-Quigley is **QUASHED IN PART** to the extent it challenges the April 25, 2024 order of the Pennsylvania Public Utility Commission (Commission). The Commission's July 11, 2024 order is **AFFIRMED**.

                                                              _____

                                                        STACY WALLACE, Judge